**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Robert Eugene JONES, Defendant and Appellant.**

**No. 19533.**

Supreme Court of Utah.

Feb. 26, 1987.

Max D. Wheeler, Craig S. Cook, Pat B. Brian, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra L. Sjogren, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The defendant appeals from convictions for first degree murder, attempted first degree murder, and aggravated burglary in connection with the murder of Kim Chapman and the shooting of Beverly Jones. The defendant assigns as error the trial court's failure to dismiss two prospective jurors for cause, the form of the jury instructions given, statements made by the prosecutor during his closing argument, and the prosecutor's failure to disclose evidence about who had possession of the weapon. We reverse and remand.

The conviction arose out of a shooting that occurred on the night of March 11, 1983. The defendant went to the home of Kim Chapman's parents, where the defendant's former girlfriend, Beverly Jones (Beverly), and her fiance, Kim Chapman (Kim), were living. Beverly and the defendant were the only surviving witnesses, and they gave conflicting accounts of the shooting. Kim died in the shooting, and Beverly sustained serious injuries. The jury ultimately convicted the defendant of first degree murder for the killing of Kim Chapman, attempted first degree murder for the shooting of Beverly Jones, and aggravated burglary.

The defendant first assigns as error the trial judge's refusal to dismiss for cause two of the prospective jurors. This Court has held that a trial court commits prejudicial error when a juror exhibits bias and the court refuses to dismiss the juror for cause, thereby compelling a party to use a peremptory challenge on the juror. *State v. Hewitt,* 689 P.2d 22, 25 (Utah 1984); *State v. Brooks,* 631 P.2d 878, 883 (Utah 1981); *State v. Bailey,* 605 P.2d 765, 768 (Utah 1980); *State v. Brooks,* 563 P.2d 799, 802–03 (Utah 1977); *State v. Moore,* 562 P.2d 629, 630–31 (Utah 1977); *see also* Utah Const. art. I, § 12 (right to trial by impartial jury guaranteed); U.C.A., 1953, § 77–35–18(e)(14) (1982) (a party may challenge for cause an impartial juror).

■ During the voir dire of the jury, two prospective jurors, Ms. Sheppard and Ms. Opheikens, stated that they knew members of Kim's family and that their associations would affect their impartiality. Ms. Sheppard stated that she worked with Kim's sister-in-law, Cheryl, and that this association would make her evaluation of some of the evidence difficult because she saw Cheryl at work every day. On further questioning, she also stated that she had never discussed the case with Cheryl, that Cheryl had never discussed with her any specific facts that she would not be able to ignore if they were not brought into evidence, and that she "hoped" she could base her decision in the case solely on the evidence introduced at trial.

The second prospective juror, Ms. Opheikens, described more direct ties to the victim and his family and stated that those ties would have a definite effect upon her decision in the case. During her testimony on voir dire, Ms. Opheikens stated that she knew the Chapman family, that she had attended school with the Chapman children, that her sister went to school with Kim, that she had attended the viewing of Kim's body, that she had discussed the murder with Kim's father and older sister at the viewing, and that it would be "hard" for her if the defendant was not found guilty or sentenced to death. Although Ms. Opheikens testified that she could look at the case "fairly," she later testified that she would expect the defendant to prove his innocence because of what she knew about the case. She reaffirmed this assertion after defense counsel explained that such a position contradicted the defendant's rights under the law. The trial judge

then explained the presumption of innocence to Ms. Opheikens in great detail and then asked her if, given what he had explained to her, she would still want the defendant to prove his innocence or if she could "follow the law." Ms. Opheikens replied that she could "follow the law."

Defense counsel challenged both Ms. Sheppard and Ms. Opheikens for cause. The trial judge refused to dismiss these two prospective jurors, and counsel used two of his peremptory challenges to remove them from the panel.

The trial court apparently refused to dismiss the two jurors for cause because they stated that they could act impartially and reach a decision in the case based solely on the evidence presented. The State's brief relies heavily on these disclaimers of bias to support its contention that the trial court did not err in refusing to dismiss the two jurors for cause. When a prospective juror expresses an attitude of bias, a later assertion by the juror that he or she can render an impartial verdict cannot attenuate the earlier expressions of bias. The court, not the juror, must determine a juror's qualification. *State v. Brooks*, 631 P.2d 878, 884 (Utah 1981). In *Brooks*, two prospective jurors indicated that their previous experiences as crime victims would cause emotional responses to the evidence presented and would affect their ability to weigh that evidence. Both also indicated, after further questioning by the trial judge, that they thought they could render impartial verdicts. *Id.* at 882. Despite these last statements, this Court held, "Their reluctant disclaimers of partiality run counter to human nature and appear ... to be impelled by a desire to attain approval." *Id.* at 884. The Court held that the trial court abused its discretion when it refused to dismiss the two jurors for cause. *Id.; see also Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981) (in a medical malpractice action, a later statement by a prospective

juror that she could be impartial "lost much of its meaning in light of other testimony and facts which suggest a bias"); *Crawford v. Manning*, 542 P.2d 1091, 1092–93 (Utah 1975) (trial court in a wrongful death action should have dismissed for cause a prospective juror who stated that she had strong feelings about anyone who would sue for the death of another even though she also stated that she could render a verdict free of bias).

Unlike the generalized expressions of potential subject-matter bias in *Brooks*, the expressions of bias in this case focused directly on the defendant and arose out of the prospective jurors' close associations with members of the murder victim's family. The prospective jurors' later statements indicating impartiality could not obviate the strong inference of bias arising from their earlier statements. The trial court committed prejudicial error when it refused to dismiss these two jurors for cause.[1]

Although our holding concerning the prospective jurors disposes of the case, we discuss briefly the defendant's remaining assignments of error in order to prevent a repetition of error and to afford guidance to the trial court on remand.

■ The defendant challenges two instructions dealing with the elements of first degree and attempted first degree murder. The instructions enumerate the elements of those crimes, using the statutory language of U.C.A., 1953, § 76–5–202 (Supp.1986), but the instructions fail to include the mens rea element in the first aggravating circumstance listed in the instruction. The first aggravating circumstance was based on section 76–5–202(1)(c), which reads, "The actor knowingly created a great risk of death to a person other than the victim and the actor." The instructions given failed to include the word "knowingly."

---

1. We note that the trial court excused two other prospective jurors for cause because of their statements that they would expect the defendant to prove his innocence. Neither of these other jurors indicated that he had any direct ties to the murder victim or the victim's family, only that the juror held a generalized belief that a defendant should have to prove his innocence. This makes the trial court's failure to dismiss Ms. Opheikens for cause even more anomalous in light of her similar statement and her direct ties to the victim's family.

*State v. Laine,* 618 P.2d 33 (Utah 1980), is dispositive of this issue. As in this case, the trial court in *Laine* gave an "elements" instruction, similar to the instruction given in this case, that also failed to include the mens rea element of the crime charged. The court also gave an "information" instruction, similar to that given in this case, that included the necessary mens rea element but did not require the jury to find the existence of each element beyond a reasonable doubt. This Court held that the trial court committed reversible error by failing to include the mens rea element of the crime charged in the "element" instruction and that the "information" instruction failed to cure the defect. *Id.* at 35. On remand, therefore, the trial court in this case should include the mens rea element of the aggravating circumstance in the element instructions on first degree and attempted first degree murder.

■ The defendant also claims error in the instructions on second degree and attempted second degree murder. The defendant is correct in arguing that the trial court erred in including the term "recklessly" in the depraved indifference to human life instruction. The legislature deleted that term from the statute in 1979, 1979 Utah Laws ch. 74, § 1, and that term should not be included in the instructions on retrial.

■ The defendant also argues that the trial court erred in the element instructions on second degree and attempted second degree murder by failing to specify that under the alternative mens rea element of causing the death of another while committing specified crimes, the victim must be someone other than "a party." U.C.A., 1953, § 76–5–203(1)(d) (Supp.1986); *cf. State v. Norton,* 675 P.2d 577 (Utah 1983) (overruled in part by *State v. Hansen,* 45 Utah Adv.Rep. 19 (Nov. 5, 1986)). In *State v. Hansen,* we held that for purposes of section 76–5–203(1)(d), "a party" includes only a co-felon. 45 Utah Adv.Rep. at 23. Although inclusion of the "other than a party" language in the instruction would have more accurately stated the elements of section 76–5–203(1)(d), the restrictive language does not apply to this case because no co-felon was involved. The omission constitutes, at most, harmless error.

■ Finally, the defendant argues that the trial court erred in not giving a separate instruction defining the State's burden of proof. In *Laine,* this Court stated:

> In holding the instruction here to be fatally defective, we do not mean to imply that all of the elements of the charged crime must necessarily be contained in one instruction, though the better practice is, we think, to do so. So long as the jury is informed what each element is *and* that each must be proved beyond a reasonable doubt, the instructions taken as a whole may be adequate even though the essential elements are found in more than one instruction.

618 P.2d at 35 (emphasis in original); *see also State v. Ruben,* 663 P.2d 445, 449–50 (Utah 1983) (holding that if the instructions as a whole adequately inform the jury of the elements of the crime charged, the failure to include all the elements in a single instruction is not error). In this case, the instructions as a whole adequately instructed the jury on the State's burden of proof. Instruction No. 3 instructed the jury on the presumption of innocence and the jury's duty to find guilt beyond a reasonable doubt. Instruction No. 4 defined reasonable doubt. Instruction No. 9 restated the counts of the information charging the defendant and concluded that the defendant's not guilty plea required the State to prove beyond a reasonable doubt each of the elements in the counts. In addition, the elements instructions given for each of the crimes charged concluded with a statement that the evidence had to establish each of the elements beyond a reasonable doubt. Thus, the instructions given adequately informed the jury of the State's burden of proof.

■ In his third assignment of error, the defendant argues that the prosecutor committed prejudicial error in his closing argument. Specifically, the defendant challenges the prosecutor's statements concerning the defendant's history of mental illness and attempted suicides and state-

ments that referred to crimes for which the defendant had not been convicted.

Counsel has considerable latitude in closing argument and "may discuss fully both the evidence and all legitimate inferences arising from the evidence." *State v. Creviston,* 646 P.2d 750, 753–54 (Utah 1982); *see also State v. Williams,* 656 P.2d 450, 454 (Utah 1982); *State v. Johnson,* 663 P.2d 48, 51 (Utah 1983). In this case, the prosecutor's statements did not constitute prejudicial error. The defendant initially introduced the evidence about his history of mental illness and his attempted suicides. The prosecutor merely gave his interpretation of that evidence. The defendant also referred to the other crimes, harassment charges filed by Beverly, and the defendant testified that none of these had ever resulted in conviction. Again, the prosecutor justifiably gave his interpretation of the significance of this evidence.

The defendant's final assignment of error goes to the prosecutor's alleged suppression of evidence concerning the chain of custody of the murder weapon. We do not discuss this issue because the defendant has apparently received the information the prosecutor allegedly withheld. Our remand on other grounds for a new trial renders this question moot.

Reversed and remanded for a new trial.

HALL, C.J., STEWART, Associate C.J., and HOWE and ZIMMERMAN, JJ., concur.