**STATE of Utah, Plaintiff and Appellee,**

v.

**Richard Chandler THOMAS, Defendant and Appellant.**

No. 890503.

Supreme Court of Utah.

March 18, 1992.

R. Paul Van Dam, Atty. Gen., Sandra L. Sjogren, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Lynn R. Brown, Joan C. Watt, Salt Lake City, for defendant and appellant.

DURHAM, Justice:

Defendant was tried for one count of rape and one count of aggravated kidnapping. The jury convicted him of rape but found him not guilty on the kidnapping charge. After his conviction, defendant moved for a new trial, based on allegations that two jurors, Salaz and Wall, had had experiences with crimes similar to those charged but had failed to indicate that fact during voir dire examination. Affidavits and posttrial testimony showed that juror Wall had once reported to police that her son was sexually assaulted by her husband and that juror Salaz had once been assaulted by a man who had hidden in her car. Defendant argued that the failure of two jurors to disclose their prior experiences deprived him of his constitutional right to an impartial jury and a fair trial. He alleged that other jurors used the fact of the nondisclosure during jury deliberations to coerce the two jurors into changing their votes from not guilty to guilty. The trial judge refused to grant a posttrial evidentiary hearing and denied defendant's motion for a new trial. *State v. Thomas*, 777 P.2d 445, 447 (Utah 1989).

Defendant appealed and we remanded, specifically directing the trial court to hold an evidentiary hearing and make a factual determination as to whether defendant was entitled to a new trial under the test adopted by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). *Thomas*, 777 P.2d at 451. On remand, an evidentiary hearing was held, and the trial judge again denied defendant's motion for a new trial, finding that the first prong of the *McDonough* test was not met and refusing to admit evidence of juror misconduct during deliberations. Defendant now appeals that second ruling, and we reverse and remand for a new trial.

## I. STANDARD OF REVIEW

Evidence sufficient to warrant a posttrial evidentiary hearing to investigate allegations of juror misconduct is not necessarily sufficient to require a new trial. *See United States v. Howard*, 752 F.2d 220, 224 (6th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985). When we first heard this case, we determined that defendant was entitled to an evidentiary hearing. In this appeal, we address the subsequent question, whether the evidence received at

the hearing was sufficient to warrant a new trial.

■ Our review in this case consists of three parts. First, the trial court's finding that jurors Wall and Salaz did not answer a material question dishonestly on voir dire is a question of fact, *Thomas*, 777 P.2d at 451; *Commonwealth v. Amirault*, 399 Mass. 617, 506 N.E.2d 129, 135 (1987), which we review under a clearly erroneous standard. Utah R.Crim.P. 26(7); Utah R.Civ.P. 52(a), 81(e); *see also State v. Walker*, 743 P.2d 191, 192 (Utah 1987) (standard of review in criminal cases involving a bench verdict is clearly erroneous standard). The trial court did not address whether the second prong of the *McDonough* test was met; this question is therefore reviewable by us as a matter of law. Finally, we review the trial court's denial of defendant's motion for a new trial under an abuse of discretion standard. *Christenson v. Jewkes*, 761 P.2d 1375, 1377 (Utah 1988).

## II. THE *McDONOUGH* TEST

In our prior opinion in this case, we specifically directed the trial court to hold an evidentiary hearing and make a factual determination as to whether defendant was entitled to a new trial under the test adopted by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*. *Thomas*, 777 P.2d at 451. The *McDonough* test mandates a new trial if the moving party demonstrates that (1) "a juror failed to answer honestly a material question on voir dire," and (2) "a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556, 104 S.Ct. at 850.

During voir dire, the judge advised the panel of prospective jurors of the rape and aggravated kidnapping charges against defendant. He then asked, "Have any of you or a close relative been a victim of a crime of violence, if so, please raise your hands." Neither Salaz nor Wall raised her hand. One of the other prospective jurors did raise her hand, explaining that she had been a victim of a sexual assault and "would rather not test" her ability to be impartial. The judge excused that juror for cause. The judge next asked, "Have any of you or any close relative been accused of a similar type of offense as the charge here against Mr. Thomas?" Again, Salaz and Wall made no response.

■ Under the first prong of the *McDonough* test, the trial court must determine whether the jurors "failed to answer honestly a material question on voir dire." *McDonough*, 464 U.S. at 556, 104 S.Ct. at 850. Here, the trial court found that defendant had failed to satisfy this first prong with regard to both Wall and Salaz, apparently because the judge subjectively believed that the jurors did not intend to deceive the court in failing to respond to the court's inquiries. We hold that despite Wall's statement that she was unaware of the need to respond to the questioning and Salaz's protestations of impartiality, the trial judge was clearly erroneous in his determination that defendant did not establish juror misconduct under the first prong of the *McDonough* test.

At the evidentiary hearing on remand, Wall was asked if she remembered that the judge asked the panel during voir dire whether any of them had a close relative who had been a victim of a violent crime. Wall recalled the question and explained that when the judge had asked about violent crimes, she "didn't think" to tell the court that she had previously accused her husband of sexually assaulting her son. On cross-examination, she stated that she thought the judge meant "something of killing or something like that." Wall was not asked why she did not respond to the second question although clearly her husband was a "close relative" who had been accused of a "similar type of offense" as defendant.

Wall's testimony shows she did not believe that, in all honesty, she should reply to the voir dire questions. Apparently, she did not consider the incident with her son to be a crime of violence. Thus, it appears that she did not act with deceit or with a fraudulent state of mind in failing to disclose that incident during voir dire ques-

tioning. The trial judge relied heavily on that testimony in finding that defendant failed to meet the first prong of the *McDonough* test. We think the trial judge placed undue weight on the subjective intent of the prospective juror.

A juror clearly cannot fail to answer honestly a material question if the juror was not asked a question regarding the subject matter alleged to have gone undisclosed. *See Hard v. Burlington Northern R.R.*, 870 F.2d 1454, 1460 (9th Cir.1989) (juror who was asked whether he was ever employed by defendant railroad not required to reveal he was former employee of predecessor railroad); *United States v. Aguon*, 851 F.2d 1158, 1170 (9th Cir.1988) (juror who was asked only general question regarding his ability to be impartial not required to reveal that he was under investigation for situation similar to that of the defendant); *United States v. O'Neill*, 767 F.2d 780, 784–85 (11th Cir.1985) (in trial for various drug offenses, juror never asked if he had any friends in law enforcement not required to reveal that he had two friends who were narcotics agents). Similarly, a juror who mistakenly fails to reveal relevant information because of a clearly ambiguous question cannot be said to have "dishonestly" answered a material question. *See Brown v. United States*, 356 F.2d 230, 232–33 (10th Cir.1966) (juror asked if anyone in his "immediate family" had been victim of attack could properly have failed to mention his brother's murder some years prior); *McDonough*, 464 U.S. at 555, 104 S.Ct. at 849–50 (juror asked about "injuries ... that resulted in any disability or prolonged pain or suffering" was justified in not mentioning son's broken leg).

In this case, however, it is impossible to conclude that Wall was not asked a question covering the undisclosed experience involving her son and her husband. Nor can it be argued that the questions on that subject were ambiguous; there are obvious similarities between a sexual assault and a rape. Furthermore, the prospective jurors were asked not one, but two questions

which should have made Wall aware of the need to bring the incident to the court's attention. Knowing the charges against defendant, Wall should have been alerted to the fact that her past experience was relevant to her service as a juror in defendant's trial. *See State v. Thompson*, 24 Utah 314, 67 P. 789, 790 (1902). This is especially so because another prospective juror, the victim of a sexual assault, was dismissed for cause within her presence.

■ Some courts have interpreted *McDonough* to require a finding of juror misconduct only if a prospective juror is aware that her answers are false. *See, e.g., United States v. Perkins*, 748 F.2d 1519, 1531 (11th Cir.1984); *Commonwealth v. Amirault*, 399 Mass. 617, 506 N.E.2d 129, 135 (1987); *Walker v. State*, 95 Nev. 321, 594 P.2d 710, 711 (1979). We think the better-reasoned approach mandates that a juror's "honesty" or "dishonesty" be determined from an objective perspective. *See McDonough*, 464 U.S. at 558, 104 S.Ct. at 851 (Brennan, J., concurring) ("One easily can imagine cases in which a prospective juror provides what he subjectively believes to be an honest answer, yet that same answer is objectively incorrect and therefore suggests that the individual would be a biased juror in the particular case."). The emphasis should be on the juror's lack of partiality rather than on her intent. *See People v. Diaz*, 152 Cal.App.3d 926, 200 Cal.Rptr. 77, 85 (1984) (right to trial by impartial jury is independent from intent of juror to conceal). Although Wall's nondisclosure was purely inadvertent, she nonetheless failed to answer a material question accurately. Her intent or lack of intent is irrelevant. We therefore conclude that the first prong of the *McDonough* test is satisfied with regard to Wall.

■ Like Wall, Salaz was asked whether she or a close relative had been the victim of a violent crime. Unlike Wall, Salaz's testimony indicates that the prior assault came to her mind during voir dire, but that she thought the incident would not affect her judgment.[1] She knew that she had

---

1. There was some testimony during Salaz's cross-examination to the effect that she did not

think of the assault during the voir dire questioning. The testimony to the contrary, how-

been a victim of a violent crime and, substituting her judgment for that of court and counsel, decided that she could be impartial and did not need to disclose the information. Defendant asserts that it was improper for Salaz to make such a judgment on her own. We agree.

This court has consistently held that the trial court, not the juror, must determine a juror's qualifications. *See State v. Jones*, 734 P.2d 473, 475 (Utah 1987) (prospective jurors who had close associations with members of murder victim's family should have been dismissed for cause despite their statements that they could act impartially); *State v. Hewitt*, 689 P.2d 22, 25–27 (Utah 1984) (when questioning revealed that juror had strong and deep impressions regarding veracity of police officer's testimony, juror should have been dismissed for cause despite his somewhat equivocal statements of impartiality); *State v. Brooks*, 631 P.2d 878, 884 (Utah 1981) (trial judge should have dismissed for cause two jurors who had been crime victims, despite their "reluctant disclaimers of partiality"); *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981) (in medical malpractice action, statement by juror that she could be impartial "lost much of its meaning in light of other testimony and facts which suggest[ed] a bias"); *Crawford v. Manning*, 542 P.2d 1091, 1092–93 (Utah 1975) (trial court in wrongful death action should have dismissed for cause prospective juror who admitted that she had strong feelings about anyone who would sue for the death of another notwithstanding her statement that she could render an impartial verdict). Here, Salaz's subjective impression that she could be fair and impartial does not overcome the fact that she had been a victim of a violent crime and failed to disclose that fact during voir dire. The first prong of the *McDonough* test is thus satisfied with regard to Salaz.

Defendant proffered evidence, not admitted by the trial court, that Wall and Salaz were pressured by other jurors to change their votes from not guilty to guilty through threats to reveal their misconduct in voir dire. This peculiar factual context does not fit comfortably within the *McDonough* analytical framework, the second prong of which focuses only on a basis for a challenge for cause.

In our prior opinion in this case, this court relied solely on the *McDonough* test as it was adopted by the United States Supreme Court. On first glance, the test articulated in that case is applicable to the facts of the present case. As demonstrated above, the first prong can be applied directly by a determination of whether there was in fact juror misconduct. Under the second prong, however, defendant cannot show that he would have had a challenge for cause because there is no record establishing a basis for this challenge, nor is there any way to show that proper disclosure by the jurors would have created such a basis. The mere fact that a juror has had some family connection to a criminal act would not justify a challenge for cause. Defendant has attempted to show severe prejudice related to the misconduct, however. The prejudice in this case does not come directly from the bias of the two jurors who misconducted themselves. Instead, the prejudice comes from the vulnerability of these two jurors to other jurors' threats to reveal the misconduct.[2] The argument is that the two jurors were vulnerable to blackmail or a form of extortion because of their nondisclosure. If proved,

---

ever, is more persuasive: Salaz testified twice during direct examination and once during cross-examination that she thought of the incident but did not bring it up because she did not believe it would affect her judgment.

2. Standing alone, harassment, pressure, or intimidation from other jurors is not a basis for impeaching a verdict. *See United States v. Casamayor*, 837 F.2d 1509, 1515 (11th Cir.1988) (citing *United States v. D'Angelo*, 598 F.2d 1002, 1004 (5th Cir.1979)), *cert. denied*, 488 U.S. 1017,

109 S.Ct. 813, 102 L.Ed.2d 803 (1989); *Smith v. Brewer*, 444 F.Supp. 482 (S.D.Iowa), *aff'd*, 577 F.2d 466 (8th Cir.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978); *Simmons First Nat'l Bank v. Ford*, 88 F.R.D. 344 (E.D.Ark.1980); *State v. Cipriano*, 24 Ariz.App. 478, 539 P.2d 952, 954 (1975). Where the pressure is based on the other jurors' improper use of a juror's misconduct during voir dire, the rule should be different because the fairness of the trial process itself is implicated.

this susceptibility to threats would destroy Wall's and Salaz's impartiality just as certainly as bias would.

To accommodate the unusual facts of this case, I would extend the second prong of the *McDonough* test to require a showing that a correct response would have provided *either* a valid basis for a challenge for cause *or* that the nondisclosure itself prevented the juror from serving as a fair, impartial factfinder. In order to satisfy the newly extended part of the second prong of the *McDonough* test in this case, defendant would have to be able to submit evidence of juror misconduct during deliberations. This is something the trial judge, as yet, has not allowed defendant to do.

In his motion for a new trial, defendant alleged that the other jurors used Salaz's and Wall's nondisclosure to coerce the latter into changing their votes during deliberations from not guilty to guilty. In support of these allegations, defendant attempted to introduce affidavits and testimony of Wall and Salaz regarding discussions that took place among the jurors during deliberations. At the posttrial evidentiary hearing, the trial court refused to admit that evidence on the ground that the admission would constitute an impermissible intrusion into the deliberative process of the jury in violation of rule 606(b) of the Utah Rules of Evidence.[3] Although we mentioned it, I think we were less than clear on this subject in our first opinion in this case.

In defining the rights of accused persons, article I, section 12 of the Utah Constitution guarantees defendants the right to a speedy trial by an impartial jury. Part of the guarantee of a trial by jury requires the jury verdict to be based on evidence that has been subject to the procedural safeguards of a fair trial. *See Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). To that effect, rule 606(b) is designed to permit juror testimony about extraneous matters and outside influences which may have come to bear on the jury verdict. At the same time, however, it has been our policy to limit narrowly the grounds for impeaching a jury verdict. *See State v. DeMille*, 756 P.2d 81, 83–84 (Utah 1988). As the trial judge properly recognized in this case, information admitted and considered must be limited strictly to evidence that is covered by the exception in rule 606(b).[4]

In the former appeal in this case, we ruled that the trial court had applied rule 606(b) too broadly. *State v. Thomas*, 777 P.2d at 451. On remand, the judge therefore admitted testimony establishing that the other jurors were aware that Salaz and Wall had undisclosed past experiences. Apparently because of a lack of clarity in our first opinion, however, testimony was not allowed regarding the content of the exchange between jurors during deliberation. Defendant now argues that the trial judge improperly limited defendant's evidentiary presentation by refusing to admit

---

**3.** That rule states:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Utah R.Evid. 606(b).

**4.** Evidence by affidavit or testimony of a juror will not be received to show the jurors' "opinions, surmises and processes of reasoning in arriving at a verdict." *State v. Gee*, 28 Utah 2d 96, 498 P.2d 662, 665–66 (1972). All inquiries into the thought processes of the jurors are improper, *see State v. Russell*, 733 P.2d 162, 164 (Utah 1987), because they would undermine the integrity of the verdict, *see Groen v. Tri–O–Inc.*, 667 P.2d 598, 603 (Utah 1983), and open a litigation floodgate. *See DeMille*, 756 P.2d at 84. Rule 606(b) limits testimony to the *objective* existence of extraneous prejudicial information or an outside influence; jurors may not testify as to how they or the other jurors were *subjectively* affected by the extraneous information. *Hard v. Burlington Northern R.R.*, 870 F.2d at 1461.

249

evidence of the prejudicial use of the voir dire-related information during jury deliberations. I agree.

Evidence that the undisclosed information was used during deliberations should be admissible under the provision of rule 606(b) allowing testimony on the question "whether any outside influence was improperly brought to bear upon any juror." Utah R.Evid. 606(b). As the United States Supreme Court observed in *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), "[A] juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Id.* at 149, 13 S.Ct. at 53 (citing *Woodward v. Leavitt*, 107 Mass. 453 (1871)). In keeping with this rule, I would allow the trial judge to admit evidence regarding the jury's improper discussion and use of the information withheld on voir dire. I would not permit the judge, however, to inquire into the impact of those words on the jurors' mental processes.

Thus, I would remand this case so that the trial judge could admit the evidence which defendant alleges would establish misconduct during deliberations and rule on the prejudice question. Justices Stewart and Zimmerman, however, believe that the jurors' withholding of material information alone, without further inquiry into jury deliberations, is sufficient to warrant a new trial. Although I am at a loss to understand why they believe both prongs of the *McDonough* test have been met, I can nevertheless concur in the result of that ruling. Therefore, defendant's conviction is reversed, and the case is remanded for a new trial.

**STEWART, Justice (concurring in the result):**

I concur with Justice Durham's opinion in all respects except one. Her opinion holds that a juror may be impeached for giving an incorrect answer to a question on voir dire if the "correct response would have provided *either* a valid basis for a challenge for cause *or* ... the non-disclo-sure itself prevented the juror from serving as a fair, impartial factfinder." To prove the latter alternative, the defendant "would have to be able to submit evidence of juror misconduct during deliberations." Although the law should certainly provide a remedy if a juror gives an incorrect answer on voir dire that calls the juror's qualification to sit into question, I disagree that a jury verdict should be impeachable on the basis of what was said during the jury's deliberations.

Justice Durham notes in footnote 2 that affidavits may not be used to impeach a jury verdict by showing harassment, pressure, or intimidation of one or several jurors by other jurors. That long-standing rule anchors the sanctity of jury verdicts, is eminently sound, and ought to be applied in this case. Justice Durham, however, states, without the benefit of any authority, "Where the pressure is based on the other jurors' improper use of a juror's misconduct during voir dire, the rule should be different...." *See* note 2.

Although there certainly are occasions when the rule against impeaching a juror's verdict by conduct that occurs during jury deliberations may seem illogical in a particular instance, on balance it seems to me that the long-established policy of the law to keep jury deliberations both secret and sacrosanct ought to be observed. In my view, the rule formulated by Justice Durham would undermine that policy. For that reason, I am not able to subscribe to it.

Nevertheless, I agree that the verdict in this case should be reversed. The questions put to the jurors which were incorrectly answered were clearly material and potentially of great importance to an attorney's making a rational decision as to how to exercise peremptory challenges. Although it is true that the answers, if truly given, may not have been a ground for a challenge for cause, peremptory challenges are nonetheless an essential and important part of choosing a jury. *State v. Worthen*, 765 P.2d 839 (Utah 1988). The oath that veniremen take to answer truthfully the questions asked on voir dire is every bit as

binding with respect to questions that go to for-cause disqualifications as to questions that may be important with respect to peremptory challenges. Here, the questions called for answers that ordinarily would have provided a fair and strong basis for removing a venireman from the panel. Certainly not all voir dire questions should be the basis for a reversal if incorrectly answered. However, I believe that the questions in this case were of such a nature that the incorrect answers provide a valid basis under the circumstances for requiring a new trial. For that reason, I concur in the result reached by Justice Durham.

ZIMMERMAN, Justice (concurring in the result):

I concur in the result reached by a majority of the court to reverse and remand for a new trial. I join in Justice Stewart's criticism of Justice Durham's extension of the rule of *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). However, I do not join Justice Stewart in believing that the second prong of the *McDonough* test is met if the question at issue goes only to the exercise of a peremptory challenge. I would limit the test only to challenges for cause. In the present case, I would hold that the second prong of the original *McDonough* test was met, a conclusion with which both Justice Durham and Justice Stewart disagree.

The second prong of *McDonough* asks whether a truthful answer to the question asked would have provided a basis for a challenge for cause. *Id.* at 556, 104 S.Ct. at 850. Justice Durham finds this standard not met because "the mere fact that a juror has had some family connection to a criminal act would not justify a challenge for cause." But at the time of the juror questioning, there was every reason to believe that any juror who had suffered, or whose family member had suffered, an assault of the type charged against defendant would have been a candidate for a motion to strike for cause. In fact, the trial court excused for cause a potential juror who disclosed such an incident. Certainly, can-

did answers by the two jurors here in question would have served as a valid basis for a similar challenge for cause.

I recognize that, after the fact, the jurors may state that they still could have judged the case impartially and the State may claim that any challenge for cause would have been denied even if the questions had been answered accurately. Justice Howe seizes on this point as a basis for affirming the conviction. I would not construe the second prong of *McDonough* so as to permit any such retrospective second-guessing as to the effect of an accurate answer to the questions asked the jurors. Hindsight should have no place in the *McDonough* analysis. *State v. Thomas*, 777 P.2d 445, 451 (Utah 1989) (Zimmerman, J., concurring). Here, the facts not disclosed would have created a prima facie case for a motion to disqualify for cause. That is enough to satisfy *McDonough*.

For the foregoing reasons, I would hold that both prongs of the *McDonough* test were satisfied and defendant is entitled to a new trial before a properly selected jury.

HOWE, Associate Chief Justice (dissenting):

I cannot agree with the result or the analysis in the opinion of either Justice Durham, Justice Stewart, or Justice Zimmerman. I would not grant a new trial.

When the case was before us the first time, we remanded it to the trial court to hold a hearing and make a factual determination as to whether the two-pronged test of *McDonough* has been met by the defendant. If the trial court determines that both prongs of the test have been met, a new trial is ordered; if not, the conviction must be and is affirmed.

*State v. Thomas*, 777 P.2d 445, 451 (Utah 1989). Now, in the opinions of Justices Durham and Stewart, a new trial is ordered, although admittedly both prongs of the test have not been met. Justice Durham would now alter the second prong; Justice Stewart abandons the *McDonough* test and would now grant a new trial for a

reason never advanced when the case was before us the first time. Both of their opinions violate the direction of the remand, which was to determine if the *McDonough* test had been met. That is now the "law of the case," and we cannot deviate from it. Justice Zimmerman stays with the *McDonough* test, but in my opinion misapplies it, as I shall demonstrate.

Proper application of the *McDonough* test proceeds as follows: First, did a juror fail to answer honestly a material question on voir dire? The trial judge asked on voir dire whether any juror or his or her close relative had been a victim of a "crime of violence." Neither juror Wall nor juror Salaz responded.

As to Wall, the trial court's finding that Wall answered truthfully must be sustained. Defendant has failed to carry his burden to show that the "sexual assault" on her son, of which Wall accused her husband, was a crime of violence. An assault can be a nonconsensual touching or fondling unaccompanied by violence. Many sexual assaults on children are just that. Defendant's counsel did not inquire as to the nature of the act or the circumstances surrounding the incident. The record simply does not establish that the assault was violent, and the trial court's finding that Wall answered truthfully is not clearly erroneous. Utah R.Civ.P. 52(a). Nor does the record establish that she should have responded to a second question, whether she or a close relative had been accused of a "similar type of offense" as the charges against defendant, which had previously been stated to be rape of an adult woman and kidnapping. An improper touching or fondling of a child by an adult bears limited similarity to the rape and kidnapping of an adult woman by a stranger. While lawyers and judges may recognize some similarity, we should not expect Wall to recognize the similarity.

As to Salaz, I agree that she was a victim of a crime of violence by her own description of the incident and that her forgetfulness cannot be overlooked. Her failure to answer cannot be excused because she thought it would not affect her judgment or impartiality. However, even though the first prong of the *McDonough* test appears to be satisfied, the second prong of that test has not been met. The second prong requires "that a correct response would have provided a valid basis for a challenge for cause." Clearly here, a challenge for cause against Salaz would not have been sustained. Justices Durham and Stewart concede this. Salaz stated at the hearing held on remand, without being urged, that the incident had not affected her so that it would impair her ability to judge defendant's guilt or innocence fairly on the evidence presented. Indeed, that was the very reason she gave for not disclosing the incident. We have held in many cases that a prospective juror is not subject to a challenge for cause because he or she may harbor preconceived notions, feelings, or ideas which will fairly yield to the evidence to be presented. Particularly is that true when the juror, without being "pushed" by the court, indicates his or her willingness to do so. That was certainly true in the instant case with Salaz. Her situation is quite unlike that presented in *State v. Brooks*, 631 P.2d 878 (Utah 1981), where two jurors harbored anger, outrage, and deep feelings about being victims of earlier crimes. The jurors had to be extensively questioned, and only after the court "pushed" them were they able to say that they thought they could act fairly. *See also State v. Hewitt*, 689 P.2d 22 (Utah 1984). Somewhat similarly in *State v. Jones*, 734 P.2d 473 (Utah 1987), a juror who had attended a viewing of the body of the victim and who worked with one of the victim's relatives was seated after expressing strong feelings about the crime. Nothing similar to those facts occurred here. I therefore disagree with Justice Zimmerman that there was a "valid basis" for a challenge for cause, even when the events which transpired during the jury's deliberation are not considered.

In short, Salaz does not meet the second prong of the *McDonough* test, and she would not have been subject to a challenge for cause under our case law. This conclusion is buttressed by the fact that juror Glashie told the court on voir dire that his brother had been murdered by an unidenti-

fied assailant. He assured the court, however, that he could nevertheless act impartially. He was not challenged for cause by defendant and was allowed to remain on the panel by the court.

I do not agree with Justice Durham that the second prong of the *McDonough* test should be expanded to fit the facts of this case. When this case was earlier before us, we held that under rule 606(b) of the Utah Rules of Evidence, the trial court could examine the answers given by the prospective jurors on voir dire and apply the two-pronged *McDonough* test. However, we did not sanction the admission of affidavits of jurors as to discussions between them during their deliberation. In my view, that would violate rule 606(b) and is quite unnecessary to the disposition of this case. Justice Durham asserts that there was "a lack of clarity" on that point in our earlier opinion. Not so. Justice Zimmerman made it additionally clear in his concurring opinion:

> First, as is clear from the majority's statement of the *McDonough* rule, the actions of those jurors subsequent to voir dire is irrelevant to a determination of whether Thomas is entitled to a new trial; the sole question is whether a correct response would have provided a valid basis for a challenge.

*State v. Thomas*, 777 P.2d 445, 451 (Utah 1989).

Application of the *McDonough* test properly and effectively disposes of this case. No court has sanctioned altering and expanding the test as Justice Durham advocates. The test as announced by the Supreme Court of the United States is eminently fair to both the prosecution and the defendant.

I would affirm. I would not grant a new trial and force the victim through another painful trial. We have accorded defendant two appeals, and no error can be found, let alone prejudicial error.

HALL, C.J., concurs.