2004 UT 97

**Stephen R. and Holley WEST,
Plaintiffs and Appellants,**

v.

**Jeffery M. HOLLEY, Defendant
and Appellee.**

No. 20020255.

Supreme Court of Utah.

Nov. 19, 2004.

Kevin J. Sutterfield, Mark T. Flickinger, Provo, for plaintiffs.

Lynn S. Davies, Melinda A. Morgan, Salt Lake City, for defendant.

PARRISH, Justice:

¶ 1 Plaintiffs Stephen R. West and Holley West appeal the trial court's denial of their motion for additur, a new trial, or judgment notwithstanding the verdict. We reverse and remand for a new trial.

## BACKGROUND

¶ 2 The Wests were driving through a parking lot in their Ford Explorer when their car was struck by a Toyota Paseo driven by Jeffery Holley. The Wests sued Holley. Among other things, Mr. West sought recovery for damage to a spinal cord stimulator that had been implanted in his back eleven months prior to the accident to alleviate his chronic pain. Mr. West alleged that the accident had shifted the leads of the stimulator from their proper positions, interfering with the stimulator's ability to function properly. Mr. West incurred costs from chiropractic care in Utah, as well as costs associated with surgically returning the leads of the spinal cord stimulator to their original therapeutic positions.

¶ 3 The case was tried to a jury. Following deliberations, the jury returned a verdict finding Holley negligent and awarding Mrs. West $3000 in special damages and Mr. West $8040 in special damages. The initial verdict did not award any general damages, nor did it award Mr. West damages for the medical expenses he incurred in connection with the reimplantation of the spinal cord stimulator. The trial judge then instructed the jury that its award of special damages required at least a nominal award of general damages. After further deliberation, the jury returned with general damage awards of $1 for each plaintiff.

¶ 4 The Wests moved for additur or, in the alternative, for a new trial or judgment notwithstanding the verdict. They argued that (1) the nominal general damage awards of $1 for each plaintiff were inconsistent with the significant special damage awards, and (2) the jury's failure to award Mr. West damages for medical expenses relating to the spinal cord stimulator required the court to grant either additur or a new trial.

¶ 5 The Wests also based their motion for a new trial on an allegation of juror misconduct. In support of their motion, they relied on the affidavit of juror Stacie Bersie in which she testified as to statements made by another juror, Susan Weinmuller, during the course of the trial. Bersie testified that Weinmuller had stated an intention to discuss the case with family members during the trial and had revealed that she had been involved in prior lawsuits that she had failed to disclose in voir dire. Bersie also testified that Weinmuller expressed strong views against awarding damages in "smaller" personal injury cases. Relying on Bersie's affidavit, the Wests argued that Weinmuller's presence on the jury infringed their right to a fair trial.

¶ 6 The trial court held a hearing regarding Weinmuller's alleged misconduct. Weinmuller appeared and denied that she had discussed the case with family members before the conclusion of the trial. She admitted, however, that she had been subject, as a business owner in California, to a contract lawsuit and to workers' compensation claims she believed were spurious. She also admitted that she should have disclosed these experiences in response to voir dire questions asked during jury selection. The trial court then questioned Weinmuller as to the impact of these experiences on her attitudes and beliefs. Although Weinmuller's responses to these questions suggested bias, she assured the court that she was capable of setting her feelings aside and deciding the case on its own merits.

¶ 7 At the conclusion of the questioning, the Wests asked the court to probe more deeply into Weinmuller's views on general damages and "what she brought into the deliberations ... from her prior experience." The trial judge declined to do so. Although he found that Weinmuller had failed to an-

swer voir dire questions truthfully, he found that her failure to do so was not material inasmuch as any truthful answers Weinmuller might have given would not have required that she be removed for cause. Reasoning that a new trial was appropriate only if Weinmuller would have been subject to removal for cause, the trial court· denied the Wests' motion for a new trial. The trial court also denied the Wests' motion for additur or judgment notwithstanding the verdict.

¶ 8 The Wests now appeal the denial of their motion, arguing that (1) the trial court abused its discretion by not granting additur or ordering a new trial because the jury awarded substantial special damages but only nominal general damages; (2) the trial court abused its discretion by denying additur or a new trial based on the jury's failure to award damages for expenses related to repairing the spinal cord stimulator; (3) the trial court abused its discretion by refusing to more thoroughly examine Weinmuller regarding her biases and alleged misconduct; (4) the trial court erred by holding that the Wests' inability to use a peremptory challenge on Weinmuller was insufficient to warrant a new trial; and (5) the trial court abused its discretion by finding that Weinmuller's answers, if given at voir dire, would not have provided a sufficient basis to remove her for cause.

¶ 9 We reverse. In deciding whether Weinmuller was subject to removal for cause had she answered the voir dire questions truthfully, the trial court abused its discretion by relying solely on Weinmuller's own assurances of her impartiality. We therefore remand with instructions to grant the Wests a new trial. Because the Wests are entitled to a new trial, it is unnecessary for us to consider their remaining claims.

## ANALYSIS

¶ 10 Weinmuller's responses to questioning by the trial court suggested that she was unable to judge the case on its own merits and created a presumption of bias that must have been rebutted to avoid her being dismissed for cause. In deciding that Weinmuller's answers did not warrant dismissing her for cause, the trial court relied on nothing more than Weinmuller's own assurances of her impartiality. As a matter of law, such assurances are insufficient to overcome a presumption of bias. The trial court therefore abused its discretion in refusing to grant the Wests' motion for a new trial.

## I. THE APPLICABLE LAW

¶ 11 We have adopted the test articulated in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), for post-trial challenges to a juror based on the juror's alleged misstatements or omissions during voir dire. *State v. Thomas,* 830 P.2d 243, 245 (Utah 1992). Under the *McDonough* test, a court first considers whether the juror in question failed to truthfully answer questions posed in voir dire. If so, the court must then consider whether truthful answers, if known at the time, would have supplied a valid basis for removing the juror for cause. *McDonough,* 464 U.S. at 556, 104 S.Ct. 845. Because we accord trial courts considerable discretion in deciding whether to dismiss potential jurors for cause, the second prong of the *McDonough* test incorporates a deferential standard of review. *See State v. Wach,* 2001 UT 35, ¶ 25, 24 P.3d 948 (stating that trial court rulings on removing jurors for cause are reviewed for abuse of discretion).

¶ 12 Although we accord trial courts considerable discretion in ruling on motions to dismiss jurors for cause, we have encouraged them to err on the side of dismissing questionable jurors. Dismissing questionable jurors before trial makes practical sense because replacement jurors are readily available. *See State v. Saunders,* 1999 UT 59, ¶ 51, 992 P.2d 951. Although such is not the case in post-trial challenges, where replacing an individual juror is no longer an option, litigants are nevertheless entitled to a fair and impartial jury. Accordingly, in reviewing post-trial challenges to a juror, we apply the same deferential standard of review that we apply to challenges brought during voir dire.

¶ 13 A trial court's discretion in ruling on challenges to a juror for cause is limited by

the Utah Rules of Civil Procedure and our case law. Rule 47(f)(6) of the Utah Rules of Civil Procedure provides for removal of a juror when "[c]onduct, responses, state of mind or other circumstances . . . reasonably lead the court to conclude the juror is *not likely* to act impartially. No person may serve as a juror, if challenged, unless the judge is *convinced* the juror can and will act impartially and fairly." Utah R. Civ. P. 47(f)(6) (emphasis added).

 ¶14 Voir dire responses revealing evidence of bias or partiality give rise to a presumption that a potential juror is biased, and the juror must be dismissed unless that presumption is rebutted. "Once statements are made during voir dire that 'facially raise a question of partiality or prejudice, an abuse of discretion occurs unless the challenged juror is removed by the court or unless the court or counsel investigates further and finds the inference rebutted.' " *Wach,* 2001 UT 35 at ¶27, 24 P.3d 948 (quoting *State v. Bishop,* 753 P.2d 439, 451 (Utah 1988)); *see also State v. Calliham,* 2002 UT 86, ¶49, 55 P.3d 573 ("When a potential juror makes statements that raise a question about her ability to be impartial, the trial court must either excuse her or further question her about these relationships and determine whether she could act impartially." (internal quotations omitted)).

 ¶15 Rebutting a presumption of bias or partiality may be accomplished if the challenged juror, upon further questioning, provides reason to believe that her previous statements showing evidence of bias were "merely the product of a 'light impression' and not one that would 'close the mind against the testimony that may be offered in opposition.' " *Bishop,* 753 P.2d at 451 (quoting *State v. Bailey,* 605 P.2d 765, 768 (Utah 1980)).[1] Under our case law, however, a presumption of bias cannot be rebutted solely by a juror's bare assurance of her own impartiality because a challenged juror cannot reasonably be expected to judge her own

fitness to serve. The trial court must focus on the juror's expressions of attitudes, opinions, and feelings about subjects related to the case, rather than on the juror's assessment of her own objectivity. "A statement made by a juror that she intends to be fair and impartial loses much of its meaning in light of other testimony and facts which suggest a bias." *Jenkins v. Parrish,* 627 P.2d 533, 536 (Utah 1981); *see also Calliham,* 2002 UT 86 at ¶49, 55 P.3d 573 ("A juror's subsequent statements that she can be impartial will not of itself attenuate the inference of bias."); *Thomas,* 830 P.2d at 247 ("[T]he trial court, not the juror, must determine a juror's qualifications."); *State v. Jones,* 734 P.2d 473, 475 (Utah 1987) ("When a prospective juror expresses an attitude of bias, a later assertion by the juror that he or she can render an impartial verdict cannot attenuate the earlier expressions of bias."); *Crawford v. Manning,* 542 P.2d 1091, 1092 (Utah 1975) ("One doubts that a person who harbors strong feelings concerning anyone who would sue to recover money for the death of another could be a fair and impartial juror.").

¶16 The applicable rule has been aptly described as follows:

> Although the courts do not endeavor to practice psychoanalysis, . . . actual bias is to be determined by the potential juror's state of mind. By necessity this must be ascertained by the expressions of attitudes, opinions, and feelings of the juror. Whenever the voir dire evokes a strong emotional response, there is posed a warning that the juror may not have a mental attitude of appropriate indifference to the party or cause before the court. In assessing this response, the statutory test is whether the expressed state of mind of the juror leads to a just inference in reference to the cause or parties that he will not act with entire impartiality. In other words, based on the juror's expressed feelings, attitudes,

---

1. Light impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but . . . those strong and deep impressions which will close

the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force, do constitute a sufficient objection to him.
*State v. Bailey,* 605 P.2d 765, 767 (Utah 1980) (internal quotations omitted).

and opinions, the trial court must determine by a process of logic and reason, based upon common experience, whether the juror can stand in attitude of indifference between the [parties]. *Furthermore, when a juror has expressed an attitude indicating prejudice or bias, such cannot be attenuated by the juror's determination that he can render an impartial verdict. The juror cannot be the judge of his qualifications; this function is the responsibility of the trial court.*

*State v. Brooks*, 631 P.2d 878, 884 (Utah 1981) (emphasis added).[2]

¶ 17 In short, after a challenged juror has provided an indication of bias or partiality, the trial court, in refusing the challenge, may not rely solely on the juror's own view that she can judge the evidence fairly. Rather, the trial court must identify some other basis for overcoming the presumption of bias. The trial court failed to do so in this case.

## II. WEINMULLER'S STATEMENTS

¶ 18 Following trial, the Wests presented an affidavit from juror Stacie Bersie. Bersie testified that juror Weinmuller had stated that she had been the subject of several claims or suits against her for personal injuries, and also that Weinmuller had expressed "very strong feelings and opinions against awarding general damages." Bersie also testified that Weinmuller had stated an intention to discuss the case with her husband and daughter and had attempted to discuss the case with fellow jurors during trial recesses.

¶ 19 Because Weinmuller had not disclosed her prior involvement in personal injury cases during voir dire, the trial court invited her in to question her about her past experiences with the judicial system and her alleged discussions with family members. Weinmuller denied having discussed the case with her family before its conclusion. The

court then reminded Weinmuller of the voir dire question calling for her to disclose any past experiences with litigation and asked if her silence at that time reflected the truth. At that point, Weinmuller admitted that a salesperson who worked for a business she had run with her husband in California had sued their company.

¶ 20 The court then asked Weinmuller whether this experience had left her with any negative feelings about the courts or the judicial system. Weinmuller responded that she also had been subject to frivolous workers' compensation claims that cost her business money because contesting them in court was generally more expensive than paying them. When the court redirected Weinmuller to the salesman lawsuit and again asked if it had left her with negative feelings about the courts, she said, "No. I just thought he was a disgruntled salesman and he was trying to make some easy money. We paid it and that was it."

¶ 21 The court then inquired about the workers' compensation claims, asking whether they had been handled in court or through some other process. The following exchange ensued:

[Weinmuller]: Well, it never even got to court because the lawyers in California, they said it would cost more to go to court than to settle out of court. And so we settled out of court and we wound up paying everything.

[Trial Court]: Did that leave you with a negative feeling toward the court system?

[Weinmuller]: Well, it taught me a good lesson in life. It taught me about people. And it's really not a negative feeling, not a disgruntled feeling about people, just that I'm very leery of people. I can feel when a sham is being presented to me and I can discern.

---

**2.** Many of the cases cited in this discussion followed *Crawford v. Manning* in holding that the loss of a party's peremptory challenge caused by a trial court's incorrect failure to sustain a challenge for cause automatically invalidated the jury's verdict. Although this rule was overruled by *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994), this line of cases remains good law with respect to "the proper standard to consider in

determining whether a trial court abused its discretion in failing to remove a prospective juror for cause." *Wach*, 2001 UT 35 at n. 2, 24 P.3d 948. Cases other than *Crawford* cited herein that were overruled in part by *State v. Menzies* are *Bishop*, 753 P.2d 439; *Jones*, 734 P.2d 473; *Brooks*, 631 P.2d 878; *Jenkins*, 627 P.2d 533; and *Bailey*, 605 P.2d 765.

[Trial Court]: Now, the question I would have asked you at the time had you given these answers to me at the time would have been: Having had those experiences and those circumstances in California, can you or would you judge this case based on its own facts, and on the law and circumstances as presented in this case?

¶ 22 Weinmuller's answer revealed that she did not really understand the question. Rather, she seemed to believe that she was being asked whether her past experiences made her more or less qualified to serve as a juror. She responded: "I would have qualified myself, definitely, because I've had that happen to me throughout the years. It's happened many times, you know, being an employer."

¶ 23 Having received an answer that was not only unresponsive, but that suggested Weinmuller considered her past experiences relevant in evaluating the Wests' case, the trial court tried again:

[Trial Court]: I'm being very careful and circumspect because there are very careful rules of law protecting the discussions and deliberations that have already taken place. And it is not my intent at this point to inquire into what went on in the jury room except in certain areas.

Did you consider this case on its own merits? Or did you consider what happened to you in California?

[Weinmuller]: No. I looked at this man [Mr. West]. My feelings about him were this was a 16–year–old boy that got injured in the knee, and for 10 years he was bilking the Ralph's grocery company. He comes here and he has a fender bender. And he's accustomed to receiving easy money and he wants to do the same thing again. He had lawsuits here, in Idaho, and he was going back to California with one. And so I looked at him and I thought this is a young man that likes to bilk the system.

¶ 24 This last response, describing Weinmuller's conclusions about Mr. West, belies any suggestion that Weinmuller was capable of serving as a fairminded juror. It demonstrates a lack of understanding as to what it means to decide a case on its own merits and establishes that Weinmuller's judgment of the case was colored by her conclusions regarding matters that were not litigated before the jury, such as the validity of Mr. West's unrelated workers' compensation claims in California and his alleged claims in other jurisdictions. Weinmuller admitted that her evaluation of Mr. West's claim against Holley was driven by her conclusion that Mr. West had previously "bilked" the system to get "easy money." Because the validity of Mr. West's prior workers' compensation claim was not at issue in this case, Weinmuller's assessment as to the validity of that claim could only have been the product of bias stemming from her own negative experiences with workers' compensation claims.

¶ 25 Taken together, Weinmuller's responses constitute more than sufficient evidence of bias to raise a presumption that Weinmuller could not fairly or impartially sit in judgment on the Wests' case. Moreover, there is nothing in any of Weinmuller's answers to suggest that she was capable of judging the case solely on the evidence presented at trial. Her answers gave the trial court no objective reason to believe that she could separate her strong feelings regarding workers' compensation claims from the Wests' claim in this case.

¶ 26 After acknowledging that Weinmuller's strong feelings regarding workers' compensation claims created a presumption of bias, the trial court denied the challenge for cause based only on Weinmuller's own opinion that she was capable of deciding the case on its merits.[3] As a matter of law, Weinmul-

3. The court stated:

[Weinmuller] has strong feelings. She felt that she had been taken advantage of as a business owner by the Workman's [sic] Compensation process in California. That was a situation that factually and directly related to this case without question.

Her conclusion of the evidence in this case was that this young man, this plaintiff had been earlier injured in a Workman's [sic] Compensation accident. I think that his treatment was in fact described during the trial as a "golden ticket." That he had a way to pay for all of the medical expenses related to that

ler's own views of her impartiality were insufficient to overcome the presumption of bias. *Brooks*, 631 P.2d at 884 ("The juror cannot be the judge of his qualifications; this function is the responsibility of the trial court."). Moreover, we can find nothing else in the record on which the trial court could have relied to overcome the presumption. Accordingly, we hold that the trial court abused its discretion in rejecting the Wests' post-trial motion to remove Weinmuller for cause.

## CONCLUSION

¶ 27 We reverse the trial court's decision denying the Wests' motion for a new trial. Pursuant to the *McDonough* test, which we adopted in *State v. Thomas*, a post-trial challenge to a juror who did not answer truthfully in voir dire must result in a new trial if truthful answers would have provided a valid basis for dismissing the juror for cause. Juror Weinmuller failed to truthfully answer questions during voir dire. Truthful answers to the voir dire questions would have created a presumption of bias. That presumption could not be overcome solely by Weinmuller's self-assessment of her ability to judge the case impartially. We therefore reverse and remand the matter for a new trial.

NEHRING, Justice, concurring:

¶ 28 I concur in Justice Parrish's opinion. I write separately to address the dissent's opinion that we owe a great measure of deference to the trial court in reviewing this matter. Justice Wilkins writes that a trial judge is in a much better position than an appellate court to assess the contemporaneous circumstances surrounding the testimony of an interviewed juror, including the juror's body language, tone of voice, and behavior. I agree.

Workman's [sic] Compensation injury for—I got the impression for forever. So long as the employee treatment was related to the Workman's [sic] Compensation injury, he had a way to pay for it.
 She clearly found that that was repugnant; she didn't like that. And she felt that that was a defect and a problem with the system. However, her statement was that she felt she would have qualified herself as a juror. When I

¶ 29 In Justice Wilkins's interpretation of our role, when the "black and white photograph" of the record is at odds with the trial judge's ruling made on that record, we should assume that the trial judge drew on behavioral clues exhibited by the witness which, owing to the trial judge's superior vantage point, provided conclusive support for his decision. We should honor on-the-scene observations and experiences of a trial judge when we are told what those observations and experiences were. Here we were not.

¶ 30 What the record does disclose is that the trial judge found the juror to have made a false or misleading statement during voir dire. In the trial judge's words, "Plainly, she [Ms. Weinmuller] failed to answer and she omitted ... important information." The trial judge characterized as "strong feelings" the views the juror held about what she perceived to be the inequitable, pro-employee workers' compensation system in California which had victimized her family business. The judge noted that the plaintiff, who had received workers' compensation benefits, had been described during the trial as being the recipient of a "golden ticket."

¶ 31 Taken together, the trial judge's amply supported finding of a materially false statement, his error in relying on the juror's own assertions of her impartiality, and the absence of a reference to any rehabilitative demeanor displayed by the juror-in fact, the only comment about the juror's demeanor underscored her potential bias—lead me to conclude that the trial court exceeded its discretion. I therefore concur in Justice Parrish's opinion.

¶ 32 Chief Justice DURHAM and Justice DURRANT concur in Justice NEHRING's opinion.

asked about that again—and I think that the impact of what she said before was that she would have done as instructed and set aside her experiences from the earlier circumstances. I didn't say that very well. She would have set aside her experiences and judged this case on its own merit. I do not feel that I would have sustained a challenge as to cause.

WILKINS, Associate Chief Justice, dissenting:

¶ 33 I respectfully disagree with the analysis and conclusions reached by my colleagues. I would defer to the evaluation of the trial court and affirm.

¶ 34 The differences between actually interviewing a juror and reading the transcript of such an interview are similar to the differences between skydiving and observing a black and white still photo of someone hanging from an open parachute. Only in the first instance does the actor have control over the course of events, the opportunity to make adjustments in the course of action, and the ability to use more than one of the senses to evaluate the circumstances presented. In the latter, all dynamic adjustment by the observer is prohibited, and nearly all informational input is screened out. There are good reasons behind the policy of the law that appellate judges defer to the on-the-scene observation, evaluation, and judgment of the trial judge in matters of this sort. The appellate judge is limited to the black and white "photograph" of the interview *experienced* by the trial judge. As a result, the trial judge is in a dramatically enhanced position, when compared with ours, to evaluate the post-trial interview of a challenged juror.

¶ 35 My colleagues conclude that the trial judge relied on "nothing more" than the juror's assurances of impartiality. However, there is no indication in the record that such was the case. More accurately, since all we can see in the record is the transcript of the conversation between juror Weinmuller and the trial judge, we assume there were no other indications. We do not know how Weinmuller behaved, or responded, or looked. We do not know how her tone of voice or inflections enhanced or detracted from her bare statements. We did not sit through the trial or the original voir dire examination. We did not have any opportunity to observe the other jurors, or the interaction of the jurors, or Weinmuller's behavior. Because we are limited to the printed record, we, as appellate judges, are severely limited when making evaluations of a person's credibility. And in this case, that is exactly what my colleagues suggest is the proper role of appellate review.

¶ 36 Today my colleagues would, and do, extend to post-trial juror challenges the same skeptical standard that we have previously encouraged trial courts to apply pre-trial when the expense and delay occasioned by replacing a questionable juror are significantly less. Moreover, we do so on marginal authority at best. Of the dozen cases relied upon by my colleagues for the proposition that a juror must be excused when it is determined after trial that a pre-trial voir dire question was not answered truthfully, only two involve post-trial challenges. The remainder draw on case law arising from the pre-trial setting of an untruthful response to a voir dire question.

¶ 37 Of the two post-trial challenge cases, only *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), presents a coherent analysis of post-trial challenges. Our only prior case on point relied upon by my colleagues, *State v. Thomas*, 830 P.2d 243 (Utah 1992) (*Thomas II*), represents four different opinions of how such an examination should be handled.

¶ 38 Under *McDonough*, the trial court faced with a post-trial challenge to a juror examines whether the juror failed to truthfully answer voir dire questions and, if so, whether truthful answers at the time of voir dire would have justified removal for cause. 464 U.S. at 556, 104 S.Ct. 845. Review of the decision in such an evaluation is deferential to the trial court's advantaged position in determining answers to both questions. Reversal of the trial court's decision requires a showing that the trial court abused its discretion in reaching the conclusion not to remove a challenged juror.

¶ 39 Utah law purports to adopt the *McDonough* test, but fails to make clear how, if at all, our application deviates from the description set out in *McDonough*. Without discussion, in *State v. Thomas*, 777 P.2d 445, 451 (Utah 1989) (*Thomas I*), we remanded to the trial court to "hold a hearing and ... make a factual determination as to whether the two-pronged test of *McDonough*" had

been met and, if so, order a new trial. No other considerations were attached to illuminate the matter. However, when the trial court held a hearing, and reached factual findings on those questions, it concluded the first prong of the *McDonough* test had not been satisfied, and declined to excuse the juror. Thomas again sought appellate review, and in *Thomas II,* three members of this court disagreed with the factual determinations of the trial court, holding as a matter of law that the trial court could not have so found on the basis of the transcript. Unfortunately for us, all three members of the majority approached the question differently and the other two members of the court dissented, indicating that they would defer to the facts as found by the trial judge and affirm.

¶ 40 The consequence is that trial judges, litigants, and citizens still do not know what level of trust we will place in the determinations made by the trial court in post-trial juror challenges of this type. My colleagues today remove all doubt by applying a non-deferential standard approaching de novo review of the facts. I would not do so.

¶ 41 Although I agree that wisdom lies in encouraging the removal of questionable jurors prior to trial when the problem may be remedied with little additional time and expense required, I differ on the standard after trial. I believe the standard set forth in *McDonough* is workable, without modification. I believe litigants, jurors, citizens, and justice are well served, and adequately protected, by a much higher level of deference to the determinations of the trial court under the *McDonough* test when the challenge arises after trial has concluded.

¶ 42 I would accept the judgment of the trial court that this juror, although not truthful with regard to a part of the voir dire examination prior to trial, was able to evaluate the evidence on its own merit, and decide the case fairly. To hold otherwise is to invite unnecessary removal of jurors, and costly retrials, in situations where it is unwise. Surely the trial court is also aware of the necessity of fairness and justice, and occupies a much-advantaged position for resolution of the concern on a case-by-case basis.