IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090400-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 2, 2012) |
| Shane L. Millett, | ) | |
| | ) | 2012 UT App 31 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 051402007
The Honorable Samuel D. McVey

Attorneys:    Margaret P. Lindsay and Douglas J. Thompson, Provo, for Appellant
             Mark L. Shurtleff and Karen A. Klucznik, Salt Lake City, for Appellee

-----

Before Judges McHugh, Roth, and Christiansen.

ROTH, Judge:

¶1    Defendant Shane L. Millett appeals his convictions for sodomy on a child, *see* Utah Code Ann. § 76-5-403.1(1)-(2) (2008), and aggravated sexual abuse of a child, *see id.* § 76-5-404.1(4)-(5), both first degree felonies, arguing that he is entitled to a new trial because an empaneled juror withheld material information in response to questions asked during voir dire, which information, if disclosed, would have supported a valid basis to challenge the juror for cause. We reverse and remand for a new trial.

BACKGROUND

¶2     In 2005, Millett was accused of sexually abusing his four-year-old niece and was charged with aggravated sexual abuse of a child and sodomy on a child. Millett had previously been convicted of attempted sexual abuse of a child in 1997, and he was therefore required to register as a sex offender. *See* Utah Code Ann. § 77-27-21.5. In registering as a sex offender, Millett was required to provide, among other information, his name, address, and a current photograph; this information and a description of the crime for which he had been convicted were made accessible on a public website. *See id.* § 77-27-21.5(12)-(13). When he registered as required, Millett indicated that he resided at an address in the city of Orem in Utah County. However, during the investigation of the offenses at issue here, it was discovered that Millett was also residing at an address in American Fork, also in Utah County. Because he had failed to register the American Fork address, Millett was also charged with failure to register as a sex offender. *See id.* § 77-27-21.5(12)(b) (requiring sex offenders to provide "the addresses of . . . primary and secondary residences"); *id.* § 77-27-21.5(14)(a) (explaining the penalties for "knowingly fail[ing] to register" as a sex offender). The State and Millett stipulated to the severance of the failure to register offense from the aggravated sexual abuse of a child and sodomy on a child offenses for trial "to avoid the possibility of prejudicing the jury" by disclosing that Millett had a prior conviction for a sexual offense.[1] *See id.* § 77-8a-1(4)(a) (governing joinder and severance of offenses for trial and providing that "the court shall order an election of separate trials of separate counts" if "a defendant . . . is prejudiced by a joinder of offenses").

¶3     Nonetheless, during Millett's trial for the aggravated sexual abuse of a child and sodomy on a child offenses in October 2006, the State moved to admit evidence of Millett's prior conviction for sexual abuse. In support of its motion, the State argued that evidence of Millett's prior conviction was necessary to rebut certain evidence and argument it anticipated from the defense and to clarify statements Millett had made to law enforcement to explain why he thought his niece would accuse him of sexual abuse. The trial court denied the State's motion because, among other reasons, it determined that evidence of Millett's prior conviction for sexual abuse would be inadmissible under rules 403 and 404(b) of the Utah Rules of Evidence, specifically concluding that "the

---

    [1]In a separate trial, Millett was found guilty of failing to register as a sex offender.

prejudice" caused by such evidence "would clearly outweigh the probativeness of that information." *See* Utah R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); *id.* R. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .").

¶4    At trial, the court conducted an extensive voir dire as part of the jury selection process. Near the beginning of the voir dire, Millett was introduced to the prospective jurors and identified as the defendant. The trial court advised the members of the venire that Millett was charged with sodomy on a child and aggravated sexual abuse of a child. Millett remained present in the courtroom during the entire voir dire process.

¶5    As voir dire proceeded, the prospective jurors were asked questions designed to determine whether they were familiar with the facts of the case or the persons involved. They were also asked a series of questions designed to uncover any attitudes or biases each might have that could influence his or her ability to be an impartial, unbiased decision-maker who would try the case on the merits. Among the questions posed to the panel, the prospective jurors were asked by the court,

> If chosen as a juror would you be will[ing] to try this case solely upon the evidence provided by the witnesses appearing before you and any papers or physical items admitted as evidence?
>
> [D]o any of you have any social, religious, neighborly, paternal, or any other such acquaintance with any of the [parties or witnesses that were introduced to you?]
>
> [Do] you have any knowledge of the facts involved or have [you] formed an opinion with respect to those?
>
> [Is] there . . . a reason that you know best why you could not try this case fairly and impartially on the evidence and without bias or prejudice for or against [either] party?

Also during voir dire, Millett's defense counsel introduced himself to the venire, explained that he represented Millett, and stated, as the trial court had previously

explained, that Millett "is accused of sexual abuse." Millett's counsel told the venire that he "noted when [the charges were] read to you that some[] of you raised your eyebrows and made some body gestures of some fashion." Millett's counsel thus asked,

> Is there anything, and recognizing [that Millett] is entitled to a fair trial and [that] he is presumed to be innocent of this, [are] there any concerns you have about sitting on a trial of this crime or this nature o[f] crime that you'd like to discuss with the judge or point out publicly here?

A member of the venire, Mr. Smith, did not respond affirmatively to any of these questions. Mr. Smith was not subject to any challenge for cause or a peremptory challenge and was seated on the jury and ultimately selected as the jury foreperson.

¶6 Millett's trial lasted for two days. Shortly after deliberations began, the trial court received a note from the jury that stated,

> One of juror members has heard [Millett's] name before on sex registry. Not sure if it is him, but name sounds familiar. Came up in discussion, but no discussion made further, however, the subject has come up. Do we proceed, again it isn't in play or consideration on our decision.

The juror who thought he recognized Millett's name from the sex offender registry was Juror Smith, both the jury foreperson as well as the author of the note. Juror Smith was brought into chambers and questioned about how he was familiar with Millett's name. Juror Smith explained that he had daughters and was "[m]aybe . . . a little over paranoid" about sex offenders, so he kept a "very updated list" of registered sex offenders in Utah County. He explained that he "thought [he] recognized the name before online somewhere on a registry" but stated that he "didn't do any research." Juror Smith said he brought this up because he wanted to "get this cleared" before proceeding with deliberations. He also explained to the trial court that he had told the other members of the jury that he thought he recognized Millett's name from a sex offender registry, but, according to Juror Smith, the jury decided to stop deliberations pending review by the court and agreed that this information "wouldn't come into play in the discussion in the decision making." The court sent Juror Smith back to the jury room, telling him that the jury was not to discuss the matter or deliberate further until it

received instruction from the court. The trial court also told Juror Smith that "[i]n this case there's no evidence at all that . . . Millett's on any registry." No other member of the jury was questioned.

¶7     Millett immediately moved for a mistrial, arguing that because Juror Smith had recognized him from the sex offender registry and shared that information with the rest of the jurors, the jury had received inadmissible, prejudicial information about Millett's prior conviction for sexual abuse. The trial court denied the motion, reasoning that because Juror Smith was uncertain about whether he had seen Millett's name on the sex offender registry, any potential prejudice caused by the extraneous information could be remedied with a curative jury instruction. The trial court then crafted such an instruction, which was given to the jury:

> As you know, many people have the same or similar name
> as other people. If you did see a name similar to [Millett]'s
> on a registry in the past it has no bearing in this case because
> there is no evidence of [Millett] being or ever having been on
> any registry. Accordingly, you will disregard any such
> thought or suspicion in reaching your verdict.

Thereafter, the jury resumed its deliberations and found Millett guilty of both offenses.

¶8     Millett subsequently moved for a new trial under rule 24 of the Utah Rules of Criminal Procedure. *See generally* Utah R. Crim. P. 24(a) ("The court may . . . grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party."). In support of his motion, Millett argued that he was entitled to a new trial due to juror misconduct that had resulted in the jury receiving inadmissible and prejudicial extraneous information. Millett contended that the information known to Juror Smith and communicated to the jury about Millett's status as a registered sex offender was the equivalent of the jury receiving evidence of Millett's prior sexual offense in violation of rule 404(b). Millett argued that information about his prior sexual offense and status as a registered sex offender "is extremely prejudicial," asserting that evidence of a prior sexual offense in a trial for sexual abuse is "probably the most prejudicial information that can be submitted to a jury." Millett also reminded the trial court that although the State had moved to admit evidence of his prior sexual offense at trial, the court had concluded that the evidence was inadmissible under rules 404(b) and 403 because it was too

prejudicial. Thus, according to Millett, because the jury had essentially received inadmissible, prejudicial evidence of Millett's prior sexual offense and status as a registered sex offender, an "impropriety which had a substantial adverse effect upon [his] rights" occurred and he was therefore entitled to a new trial, *see id.* R. 24(a).

¶9 In considering Millett's motion for a new trial, the trial court agreed with Millett that the information at issue was likely prejudicial, reasoning that "information relating to . . . Millett's prior sex offense and his listing on the sex offender registry likely would have been excluded as prejudicial under [r]ule 404(b) of the Utah Rules of Evidence." The trial court also acknowledged that the parties had "stipulated to try the count relating to [Millett]'s failure to keep his registration current with the sex offender registry separate from the counts tried in this case and not to introduce any evidence relating to his status as a sex offender during trial of the other counts" so as to "avoid . . . prejudicing the jury."

¶10 The trial court concluded, however, that any prejudicial effect of the information about Millett's status as a registered sex offender had been "mitigated by several factors." The trial court emphasized that not only was Juror Smith uncertain about whether he had seen Millett's name on the sex offender registry but that "the extraneous information communicated to the jury was presented as a possibility, not as a fact or assertion." The trial court also considered the jury's diligent and conscientious self-policing to have mitigated any harmful effect from the information because the jurors "recognized the improper nature of the" information, sought direction from the trial court, "engag[ed] in no further deliberations until the issue was resolved," and "express[ed] their intent not to consider the information," which collectively "show[ed] that] the jury took its charge and oath seriously." The trial court also reasoned that the "curative instruction [it had given] to the jury . . . further mitigated Juror Smith's disclosure" because the "instruction was definitive and did not leave the issue open." The trial court determined that the instruction had "likely [been] effective given the uncertain nature of Juror Smith's information" and was likely "obeyed" given the jury's illustrated "conscientious" exercise of its charged duty. Finally, the trial court reasoned that Millett "likely would have been convicted regardless of the extraneous information" because the conviction was "based on strong evidence" in the form of "testimony from a competent and credible child witness, one of the strongest, most well-spoken child witnesses the [trial c]ourt has seen."

¶11 In summary, the trial court reasoned that the "uncertain and speculative nature of" Juror Smith's statement that he thought he recognized Millett's name from a sex offender registry as well as "the jury's conscientious nature and self-policing, the strong evidence in the case, and the . . . curative instruction" all "combine[d] to overcome the prejudicial appearance of th[e] extraneous information" that was communicated to the jury. The trial court thus decided that it could not say that this information "had any influence on the verdict," nor could it say that it had a "'substantial adverse effect'" on Millett's rights. (Quoting Utah R. Crim. P. 24(a).)

¶12 The trial court also conducted a brief analysis under *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), in which the United States Supreme Court established a two-prong test (the *McDonough* test) to determine whether a juror's misstatement or omission in response to questions asked on voir dire constitutes juror misconduct, entitling the moving party to a new trial. *See id.* at 556. Under the *McDonough* test, the moving "party must demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* Under the first prong of the *McDonough* test, the trial court acknowledged that "if Juror Smith knew of [Millett]'s name [being on a sex offender registry] prior to voir dire and remembered it [during voir dire], he would have failed to answer a material question honestly." However, the trial court reasoned that the "more likely occurrence" was that Juror Smith had forgotten the names he had seen on the sex offender registry then "suddenly remembered seeing [Millett]'s name or a similar name on the sex offender registry either during the trial or just before deliberations." Thus, reasoning that Juror Smith's omission was the inadvertent result of forgetfulness, the trial court concluded that Juror Smith had not failed to answer honestly a question on voir dire. Under the second prong of the *McDonough* test, the trial court reasoned that "[t]here is no principled reason to doubt Juror Smith was being sincere when he stated he was uncertain about whether he had seen [Millett]'s name" on the sex offender registry. The trial court thus concluded that Juror Smith's "uncertainty about whether it was [Millett] who was on the [sex offender registry] would still have allowed him to survive a challenge for cause." Having concluded that the *McDonough* test was not satisfied, the trial court denied Millett's motion for a new trial. Millett appeals.

ISSUES AND STANDARDS OF REVIEW

¶13     Millett appeals the trial court's denial of his motion for a new trial. "[T]he trial court's decision to deny [a] defendant's motion for a new trial is reviewed under an abuse of discretion standard." *State v. Evans*, 2001 UT 22, ¶ 26, 20 P.3d 888. However, "we review the legal standards applied by the [trial] court in denying [a] motion [for a new trial] for correctness." *State v. Allen*, 2005 UT 11, ¶ 50, 108 P.3d 730.

¶14     As a basis for appealing the trial court's denial of his motion for a new trial, Millett challenges the trial court's conclusion that the *McDonough* test was not satisfied.[2] Specifically, Millett challenges the trial court's determination that Juror Smith did not fail to answer honestly a material question on voir dire as well as the trial court's determination that even if Juror Smith had failed to answer honestly a material question on voir dire, an honest answer would not have been a valid basis for a challenge for cause.

¶15     "The trial court's conclusion that the *McDonough* test was not satisfied is a legal conclusion that we review for correctness." *Evans*, 2001 UT 22, ¶ 26. Under the first prong of the *McDonough* test, "the trial court's finding that [a] juror[] . . . did not answer a material question dishonestly on voir dire is a question of fact, which we review under a clearly erroneous standard." *State v. Thomas*, 830 P.2d 243, 245 (Utah 1992) (citation omitted). However, in this case, the facts that are relevant to the first prong of the *McDonough* test are essentially undisputed; and to the extent that the facts are susceptible to multiple interpretations, the parties do not purport to raise an issue of fact, and we therefore accept the trial court's interpretation of the facts. Accordingly, there are no factual findings to review for clear error in this case. Rather, the issue presented here is whether the trial court misapplied the first prong of the *McDonough* test in determining whether Juror Smith failed to answer honestly a material question on voir dire. Whether the trial court misapplied the first prong of the *McDonough* test is a question of law, which we review for correctness. *See Chen v. Stewart*, 2004 UT 82, ¶

---

[2]In his motion for a new trial, Millett did not present any argument under the *McDonough* test. But because the trial court included an analysis under the *McDonough* test as a basis for its decision denying Millett's motion for a new trial, this issue is appropriately before us. *See generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (explaining that an issue is preserved for appeal if "the trial court has an opportunity to rule on that issue").

19, 100 P.3d 1177 ("[W]hether the trial court applied the proper legal standard is a question of law that is reviewed for correctness.").

¶16    The second prong of the *McDonough* test--whether an honest answer to the questions asked on voir dire would have supported a valid basis for a challenge for cause--"incorporates a deferential standard of review" because "trial courts [are accorded] considerable discretion in deciding whether to dismiss potential jurors for cause." *West v. Holley*, 2004 UT 97, ¶¶ 11-12, 103 P.3d 708 ("[I]n reviewing post-trial challenges to a juror, we apply the same deferential standard of review that we apply to challenges brought during voir dire.").

ANALYSIS

I. Under the *McDonough* Test, Millett Is Entitled to a New Trial

¶17    "The court may . . . grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Utah R. Crim. P. 24(a). A criminal defendant may be entitled to a new trial due to juror misconduct. *See Thomas*, 830 P.2d at 245. In *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), the United States Supreme Court established the two-pronged *McDonough* test to determine when juror misconduct entitles a defendant to a new trial in the context of "post-trial challenges to a juror based on the juror's alleged misstatements or omissions during voir dire," *West*, 2004 UT 97, ¶ 11. In particular, the *McDonough* test "address[es] situations in which original voir dire questioning does not elicit necessary or proper responses from a jury panel member who later becomes part of the jury." *Rasmussen v. Sharapata*, 895 P.2d 391, 395 (Utah Ct. App. 1995). The *McDonough* test, which was adopted by the Utah Supreme Court in *State v. Thomas*, 830 P.2d 243 (Utah 1992), "mandates a new trial if the moving party demonstrates that (1) 'a juror failed to answer honestly a material question on voir dire,' and (2) 'a correct response would have provided a valid basis for a challenge for cause.'" *Id.* at 245 (quoting *McDonough*, 464 U.S. at 556). "[A] post-trial challenge to a juror who did not answer truthfully in voir dire *must* result in a new trial if truthful answers would have provided a valid basis for dismissing the juror for cause." *West*, 2004 UT 97, ¶ 27 (emphasis added). "Both [prongs of the *McDonough* test] are necessary to successfully challenge the participation of the juror in question." *State v. Shipp*, 2005 UT 35, ¶ 19, 116 P.3d 317.

¶18    Millett argues that because Juror Smith likely recognized Millett's name from the sex offender registry but did not disclose this information during voir dire, he failed to answer honestly material questions on voir dire. Millett further argues that a disclosure by Juror Smith during voir dire that he recognized Millett's name from the sex offender registry would have provided a valid basis to successfully challenge Juror Smith for cause. We agree that Millett has satisfied both prongs of the *McDonough* test, and he is therefore entitled to a new trial. *See West*, 2004 UT 97, ¶ 27 ("[A] post-trial challenge to a juror who did not answer truthfully in voir dire *must* result in a new trial if truthful answers would have provided a valid basis for dismissing the juror for cause." (emphasis added)); *Thomas*, 830 P.2d at 245 (explaining that satisfaction of the *McDonough* test "mandates" a new trial).

A.  Juror Smith Failed To Answer Honestly a Material Question on Voir Dire

¶19    Under the first prong of the *McDonough* test, the moving party must show that "'a juror failed to answer honestly a material question on voir dire.'" *Thomas*, 830 P.2d at 245 (quoting *McDonough*, 464 U.S. at 556). In support of his argument that Juror Smith failed to answer honestly a material question on voir dire, Millett focuses on two particular questions: first, whether "there [wa]s a reason that . . . [any juror] could not try this case fairly and impartially on the evidence and without bias or prejudice for or against [either] party"; and, second, "recognizing [that Millett] is entitled to a fair trial and [that] he is presumed to be innocent . . . , [whether the members of the panel would like to discuss] any concerns . . . about sitting on a trial of this crime or this nature o[f] crime." Millett and the State agree that the voir dire questions upon which Millett relies are material questions. Therefore, the issue before us is whether Juror Smith answered these questions on voir dire honestly.

¶20    "'Some courts have interpreted [the first prong of the] *McDonough* [test] to require a finding of juror misconduct only if a prospective juror is aware her answers are false.' However, the Utah Supreme Court has determined that 'the better-reasoned approach mandates that a juror's "honesty" or "dishonesty" be determined from an objective perspective.'" *State v. Hauptman*, 2011 UT App 75, ¶ 4, 249 P.3d 1009 (mem.) (quoting *Thomas*, 830 P.2d at 246), *cert. denied*, 262 P.3d 1187 (Utah 2011); *see also McDonough*, 464 U.S. at 559 (Brennan, J., concurring) ("One easily can imagine cases in which a prospective juror provides what he subjectively believes to be an honest answer, yet that same answer is objectively incorrect and therefore suggests that the

individual would be a biased juror in the particular case.").  Thus, a juror's "intent or lack of intent is irrelevant" in determining whether a juror failed to answer honestly a question on voir dire.  *Thomas*, 830 P.2d at 246.  Instead, under the first prong of the *McDonough* test, "[t]he emphasis should be on [information that indicates] the juror's lack of [im]partiality rather than on her intent" in failing to answer a question accurately because whether a juror can be an impartial, unbiased decision-maker is independent of whether or not a juror consciously intends to conceal relevant information.[3]  *Id.*

¶21     In considering the first prong of the *McDonough* test, the trial court reasoned that "if Juror Smith knew of [Millett]'s name [being on the sex offender registry] prior to voir dire and remembered it [during voir dire], he would have failed to answer a material question honestly."  The court found, however, that it was more likely that Juror Smith saw Millett's name before the voir dire but forgot until he "suddenly remembered seeing [Millett]'s name . . . on the sex offender registry either during the trial or just before deliberations."  Thus, according to the trial court, because Juror Smith did not remember having seen Millett's name on the sex offender registry at the time of voir dire, he did not fail to answer a voir dire question honestly.  Based on this reasoning, the trial court concluded that the first prong of the *McDonough* test was not satisfied.

¶22     Whether a juror has failed to answer honestly a question on voir dire due to a lapse in and subsequent recovery of memory has been addressed in *Rasmussen v. Sharapata*, 895 P.2d 391 (Utah Ct. App. 1995).  In *Rasmussen*, the prospective jurors were asked during voir dire if they had read any literature on tort reform.  *See id.* at 392-93.  After being impaneled, a juror who had originally answered that question in the negative recalled that he had indeed read such an article, and he brought this information to the attention of the trial court.  *See id.* at 393.  It was "undisputed that [the juror]'s failure to disclose [that] he had read tort reform literature was . . . purely inadvertent" because "[h]e simply did not remember reading it until after the jury was

---

[3]Although the first prong of the *McDonough* test describes the issue as whether a juror failed to answer a question *honestly* on voir dire, because a juror's "intent or lack of intent is irrelevant" in determining whether the first prong of the *McDonough* test is satisfied, *see State v. Thomas*, 830 P.2d 243, 246 (Utah 1992), it is perhaps more on the mark to say that the issue is whether a juror failed to answer a question *accurately* on voir dire.

impaneled." *Id.* at 396. Nonetheless, this court concluded that the first prong of the *McDonough* test was satisfied because, regardless of his intent, the juror "did not answer the question accurately." *Id.*[4]

¶23 Under *Rasmussen*, because the prospective juror's "intent or lack of intent is irrelevant" in determining the accuracy of an answer given in voir dire, *see State v. Thomas*, 830 P.2d 243, 246 (Utah 1992), it is similarly irrelevant whether information is inadvertently omitted due to forgetfulness and is not remembered or recalled at the time of voir dire, *see Rasmussen*, 895 P.2d at 396. Rather, the accuracy of an answer given in response to a voir dire question is determined by applying an objective standard to determine the information a juror knows or reasonably can be deemed to possess at the time of voir dire, whether or not that information has fully risen to the surface of memory. *See id.; see also Hauptman*, 2011 UT App 75, ¶ 5 (observing that many cases employing the *McDonough* test involve scenarios "in which jurors untruthfully answered a question regarding their prior experiences or current

---

[4]Another case that is of interest here is *State v. Evans*, 2001 UT 22, 20 P.3d 888. In *Evans*, a prospective juror was asked on voir dire whether any friends or family members were employed by the district attorney's office. *See id.* ¶ 24. The juror, who was eventually empaneled, answered in the negative, but as it turned out, her uncle by marriage was the chief deputy in the prosecutor's office. *See id.* ¶¶ 24-25. When this information was discovered, the juror was interviewed at length. *See id.* ¶¶ 24, 27. Although the juror knew that her uncle was an attorney, she "did not know whether he prosecuted or defended, nor did she ever talk to him about his work." *Id.* ¶ 27. The Utah Supreme Court did not directly reach the issue of whether the juror in question had failed to answer the voir dire question honestly; rather, the court focused on the second prong of the *McDonough* test--whether disclosure of the information at issue during voir dire would have required her dismissal for cause. *See id.* ¶¶ 27-28. The court, however, acknowledged that the trial court had "concluded that the first p[rong of the *McDonough* test] was satisfied because [the juror], albeit inadvertently, had failed to disclose the fact that her uncle is an attorney in the prosecutor's office." *Id.* ¶ 25. Thus, according to the trial court in *Evans*, it did not matter whether the relevant information was actually known to her; rather, under the *McDonough* test, because her answer was factually inaccurate, she had failed to answer honestly a question on voir dire. Nevertheless, the *Evans* court did not decide the issue, and the trial court's decision is not controlling authority.

situation[, which] answers . . . could be determined to be true or false at the time they were given"). In other words, if an answer provided in response to voir dire questions is inaccurate in light of information that is known to the juror, regardless of whether he or she is able to recall it from the recesses of memory at the time of the response, the prospective juror has failed to answer honestly the question on voir dire.

¶24  The trial court found that Juror Smith "didn't do any research" to determine if Millett was a registered sex offender after being empaneled and only "suddenly remembered seeing [Millett]'s name or a similar name on the sex offender registry either during the trial or just before deliberations."[5] So accepting that Juror Smith did not conduct any independent research after being empaneled, any information he remembered from the sex offender registry must have been accessed before he was summoned for jury duty. Thus, assuming that Juror Smith was exposed to any information about the identities of sex offenders in Utah County during his regular perusal of the sex offender registry, he must have possessed this information during voir dire, even if he did not recall it at that time. Under *Rasmussen*, the fact that Juror Smith may have forgotten about seeing Millett's name or a similar name on the sex offender registry is not relevant to the analysis under the first prong of the *McDonough* test. Rather, if Juror Smith possessed this information but did not disclose it in response to a voir dire question that sought to elicit that information, his answer would be objectively inaccurate. By reasoning that Juror Smith had simply forgotten about seeing

---

[5]The trial court found that Juror Smith had not intentionally committed misconduct by "disclos[ing] to the jury that he believed [Millett] to be on the sex offender registry . . . with the purpose of discrediting [Millett] or raising prejudice against [Millett]"; by "engag[ing] in [impermissible] outside research after being sworn as a juror in the case"; or by remembering Millett's name at the time of voir dire yet intentionally withholding that information. Rather, the trial court concluded that "[t]here is no principled reason to doubt Juror Smith was being sincere when he stated he was uncertain about whether he had seen [Millett]'s name [on the sex offender registry] and stated during questioning by the [trial c]ourt and counsel that '[he] didn't do any research.'" This is how the trial court interpreted the evidence, and its interpretation of the facts is not challenged, nor does that interpretation appear to be clearly erroneous. *See Thomas*, 830 P.2d at 245 ("[T]he trial court's finding that [a] juror[] . . . did not answer a material question dishonestly on voir dire is a question of fact, which we review under a clearly erroneous standard." (citation omitted)).

Millett's name or a similar name on the sex offender registry during voir dire, the district court based its conclusion that Juror Smith had not failed to answer honestly a question on voir dire based on his subjective intent in failing to disclose the information rather than considering whether his response was objectively accurate under the circumstances. In so doing, the trial court erred by misapplying the first prong of the *McDonough* test. *See supra* ¶ 15; *see also Thomas*, 830 P.2d at 245 (concluding that a trial court's finding that a juror did not fail to answer honestly a question on voir dire based upon the court's belief that the juror did not subjectively intend to deceive the court is clearly erroneous because it misapplies the objective standard that must be applied under the first prong of the *McDonough* test).

¶25     The State, however, argues that Juror Smith did not fail to answer honestly a question on voir dire because "the questions [asked] . . . were not framed in a manner that required Juror Smith to disclose . . . information" about whether he recognized Millett's name from the sex offender registry. As the State contends, the nature of the questions asked on voir dire is important in analyzing the first prong of the *McDonough* test because "[a] juror clearly cannot fail to answer honestly a material question if the juror was not asked a question regarding the subject matter alleged to have gone undisclosed." *Thomas*, 830 P.2d at 246. "Similarly, a juror who mistakenly fails to reveal relevant information because of a clearly ambiguous question cannot be said to have 'dishonestly' answered a material question." *Id.* Indeed, the specificity of the questions asked on voir dire distinguishes this case from others where the first prong of the *McDonough* test is at issue. For example, in *Rasmussen*, the prospective jurors were asked specific questions about whether the jurors had read any material on tort reform. *See* 895 P.2d at 392-93. Because the juror in *Rasmussen* had in fact read an article on tort reform, his answer in response to that question was clearly inaccurate. *See id.* at 396. Here, however, Juror Smith was not asked directly whether he recognized Millett's name from the sex offender registry. *See generally Thomas*, 830 P.2d at 246 ("A juror clearly cannot fail to answer honestly a material question if the juror was not asked a question regarding the subject matter alleged to have gone undisclosed."). Rather, in support of his argument that Juror Smith failed to answer honestly a question on voir dire, Millett relies on more broad, catch-all questions inquiring whether the prospective jurors "could not try this case fairly and impartially on the evidence and without bias or prejudice for or against a party" and whether they had "any concerns . . . about sitting on a trial of this crime or this nature o[f] crime." The State therefore argues that because the pertinent questions are so broad, they cannot reasonably be read to elicit specific information about whether Juror Smith recognized Millett from the sex offender

registry.  The State further argues that the questions were intended to elicit information from the prospective jurors about whether they subjectively felt they could try the case fairly and impartially on the evidence or had any concerns about serving as a juror on this case or a case of this nature.  Thus, according to the State, Juror Smith was not required to answer that he recognized Millett's name from the sex offender registry if that information did not make him feel any "concern[]" about his ability to "try this case fairly and impartially on the evidence."

¶26    We agree with the State that these questions are broad.  That is why questions such as these are often asked near the end of voir dire:  in order to give each prospective juror--in the context of a voir dire that has been focused on selecting a fair and impartial jury--a sort of ultimate opportunity to consider whether he or she has experiences, knowledge, or attitudes that could make it difficult to be an impartial decision-maker in a particular case.  But regardless of how broad or subjective the questions at issue are, the facts here show that Juror Smith had a response to the question about whether he was concerned "about sitting on a trial of this crime or this nature o[f] crime" because of specific information in his possession.  When Juror Smith disclosed to the other jurors and the trial court that he thought he recognized Millett's name from the sex offender registry, he expressed just the sort of concern that this voir dire question was intended to elicit.  Indeed, the trial court specifically found that Juror Smith interrupted jury deliberations and "brought the information out because he was concerned with his qualification as a juror and genuinely wanted direction from the [c]ourt."  Thus, Juror Smith's actions and statements in response to recalling this information supports a conclusion that he failed to answer honestly this particular question on voir dire because, upon remembering that he recognized Millett's name or a similar name from the sex offender registry, he was concerned about the effect that information might have on his ability to serve fairly and impartially as a juror in this case.[6]

---

[6]Our recent decision in *State v. Hauptman*, 2011 UT App 75, 249 P.3d 1009 (mem.), *cert. denied*, 262 P.3d 1187 (Utah 2011), does not require a different result here.  In *Hauptman*, a prospective juror was asked during voir dire whether she could remain "fair and impartial" if presented with evidence "that the defendant has in the past viewed pornography."  *See id.* ¶ 3.  The juror answered in the negative and was empaneled.  *See id.*  After the trial had ended and the jury had found the defendant guilty, the juror wrote a letter to the trial court confessing that "[a]s much as [she]

(continued...)

¶27 Further, Juror Smith's illustrated concern is not an unreasonable response in light of the entirety of the voir dire. *See, e.g., Thomas*, 830 P.2d at 246-47 (concluding that a juror had failed to answer honestly questions on voir dire by considering, in part, that (1) the juror knew the charges against the defendant, (2) the prospective jurors were asked multiple questions about the subject at issue, which should have alerted the juror of the need to bring the information to the court's attention, and (3) the juror witnessed the dismissal for cause of another prospective juror who had disclosed information similar to that withheld by the juror). In addition to being asked whether he had "concern[] . . . about sitting on a trial of this crime [and of] this nature o[f] crime," Juror Smith was informed that Millett was charged with sexual abuse of a child and was asked whether he had "*any* . . . acquaintance" with Millett. (Emphasis added.) Juror Smith was also instructed that to be a juror in this case he would be required to "try this case solely upon the evidence provided," and was thus asked whether he had "any knowledge of the facts" of this case and whether he could "try th[e] case fairly and

---

[6](...continued)

believed during jury selection that [the defendant viewing] pornography would not play a part in [her] vote, [she] regret[ted] to say that it did to some extent," and she had "voted guilty for the wrong reasons and [her] conscience w[ould] not let [her] get away with it." *Id.* In applying the first prong of the *McDonough* test, the court distinguished "cases in which jurors untruthfully answered a question regarding their prior experiences or current situation[, which] answers . . . could be determined to be true or false at the time they were given" from circumstances where "the prospective jurors [are asked] to predict whether they c[an] remain impartial under a certain hypothetical situation." *Id.* ¶ 5. Ultimately, the court concluded that "fail[ure] to live up to predictions" or "an incorrect prediction does not amount to a dishonest answer," and the juror had "answered the question on voir dire with her honest opinion of whether she could remain impartial." *Id.* ¶¶ 6-7.

The facts here are distinguishable from *Hauptman* because during the course of the trial, Juror Smith remembered information that was already in his possession that, once remembered, caused him concern about his ability to try this case fairly and impartially. This is, therefore, not a situation where Juror Smith was "predict[ing] whether [he] could remain impartial under a certain hypothetical situation" but, rather, is a situation where the accuracy of Juror Smith's answers can be determined at the time they were given based on information known to Juror Smith at the time of voir dire. *See id.* ¶ 5.

impartially on the evidence." Based on these questions, Juror Smith was alerted that any information about Millett and any information relating to the facts of this case and the issues involved was relevant information that could affect his qualification as a juror in this case. Thus, in light of the entirety of the voir dire preceding a trial for sexual abuse of a child, Juror Smith's expressed concern over his possession of information about Millett's status as a registered sex offender is not unreasonable.

¶28   Ultimately, by not disclosing that he thought he recognized Millett's name from the sex offender registry, Juror Smith failed to answer accurately a material question on voir dire. We therefore conclude that the first prong of the *McDonough* test is satisfied.

B. An Honest or Accurate Answer from Juror Smith Would Have Supported a Challenge for Cause

¶29   Under the second prong of the *McDonough* test, it must be determined whether honest answers to the questions asked on voir dire, "if known at the time, would have supplied a valid basis" for a challenge for cause. *West v. Holley*, 2004 UT 97, ¶ 11, 103 P.3d 708 (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1989)); *see also State v. Thomas*, 830 P.2d 243, 245 (Utah 1992).

¶30   Rule 18(e)(14) of the Utah Rules of Criminal Procedure requires the removal of a juror for cause when "[c]onduct, responses, state of mind or other circumstances . . . reasonably lead the court to conclude the juror is not likely to act impartially." Utah R. Crim. P. 18(e)(14). Rule 18(e)(14) further provides that "[n]o person may serve as a juror . . . unless the judge is *convinced* the juror can and will act impartially and fairly." *Id.* (emphasis added). Although the term "convinced" is "not an evidentiary standard," it "implies a high standard for judicial decision-making" and is "intended to encourage the trial judge to be thorough and deliberative in evaluating challenges for cause." *See* Utah R. Crim. P. 18(e)(14) advisory comm. note (2007). Further, use of the term "convinced" "encourage[s] judges to exercise greater care in evaluating challenges for cause and to resolve legitimate doubts in favor of removal" of a prospective juror. *See id.* While trial courts are given wide latitude in dismissing jurors for cause, they are "encouraged . . . to err on the side of dismissing questionable jurors." *West*, 2004 UT 97, ¶¶ 11-12. *See also* Utah R. Crim. P. 18(e)(14) advisory comm. note (2007) ("Although thorough questioning of a juror to determine the existence, nature and extent of a bias is appropriate it is not the judge's duty to extract the 'right' answer from or to 'rehabilitate' a juror.").

¶31     In considering Millett's motion for a new trial, the trial court recognized that "information relating to . . . Millett's prior sex offense and his listing on the sex offender registry likely would have been excluded as prejudicial." Indeed, the trial court itself determined during trial that evidence of Millett's prior conviction for sexual abuse was inadmissible and prejudicial and acknowledged that the parties had stipulated to try the sexual offenses separate from the failure to register offense so as to "avoid prejudicing the jury." However, the trial court found that "[t]here is no principled reason to doubt Juror Smith was being sincere when he stated that he was uncertain about whether he had seen [Millett]'s name" on the sex offender registry. The trial court therefore reasoned that Juror Smith's uncertain suspicion that Millett was a registered sex offender could be remedied with an admonition and curative instruction. Thus, under the second prong of the *McDonough* test, the trial court concluded that Juror Smith's "uncertainty about whether it was [Millett] who was on the [sex offender registry] would still have allowed him to survive a challenge for cause."

¶32     Juror Smith's uncertainty about whether it was Millett's name that he saw on the sex offender registry is a central issue in this case. If Juror Smith were certain that Millett was a registered sex offender in the context of a trial for child sexual abuse, it would be presumed that he was incapable of being a fair, impartial juror who was capable of trying the case on the merits, and he almost certainly would have been removed for cause. Uncertainty, however, suggests a possibility that Juror Smith was capable of trying the case fairly and impartially on the merits. We must therefore determine whether Juror Smith's uncertainty could sufficiently convince the trial court that he was capable of "act[ing] impartially and fairly." *See* Utah R. Crim. P. 18(e)(14) ("No person may serve as a juror . . . unless the judge is *convinced* the juror can and will act impartially and fairly." (emphasis added)).

¶33     Under the facts of this case, we are not persuaded that Juror Smith's uncertainty is convincing that he is capable of "act[ing] impartially and fairly." *See id.* Juror Smith admitted that out of concern for his daughters he was "[m]aybe . . . a little over paranoid" about sex offenders, and he therefore kept a "very updated list" of sex offenders registered in Utah County during the same time period that Millett was a registered sex offender located in Utah County. Thus, relying on Juror Smith's uncertainty as dispositive of whether he would have been subject to dismissal for cause is unsettling because it ignores the obvious: Juror Smith likely thought Millett's name was familiar from the sex offender registry because he had actually seen Millett's name

on the sex offender registry. As a juror in Millett's trial, Juror Smith was in a position where he observed Millet and heard his name repeatedly over the course of a two-day trial. During this time, Juror Smith also heard testimony and argument that Millett had sexually abused a child. By placing Juror Smith in such a position, it seems likely that Millett's presence and the subject matter of the trial could trigger Juror Smith's memory of the information he had been exposed to, causing him to recall that he had seen Millett's name on the sex offender registry. Further, the possibility that he recognized Millett's name from the sex offender registry troubled Juror Smith enough that he was not able to dismiss the notion but instead felt compelled to reveal this information to the other jurors when deliberations began. Also troubling is the possibility that Juror Smith heard the evidence presented at trial while dealing with his burgeoning concern that he possibly recognized Millett from the sex offender registry, even if the actual recollection never fully coalesced. As a result, Juror Smith's perception of the evidence could be colored by his suspicion that Millett was a registered sex offender.

¶34    We are similarly unpersuaded that Juror Smith's uncertainty about something that is true in fact could be adequately rehabilitated by admonition. After Juror Smith disclosed his suspicion that he recognized Millett from the sex offender registry, the trial court unequivocally told Juror Smith that "there's no evidence at all that . . . Millett[ is] on any registry of any type" and again instructed Juror Smith and the rest of the jury before deliberations resumed that "there is no evidence of [Millett] being or ever having been on any registry." Had Juror Smith disclosed his suspicions at the time of voir dire and had the trial court responded at that time with a similar statement, it is unlikely that the trial court's admonitions would have been sufficient to rehabilitate Juror Smith. *See West v. Holley*, 2004 UT 97, ¶ 14, 103 P.3d 708 ("Voir dire responses revealing evidence of bias or partiality give rise to a presumption that a potential juror is biased, and the juror must be dismissed unless that presumption is rebutted [upon further questioning and investigation]."). As we have discussed, by routinely accessing the sex offender registry, it is likely that Juror Smith actually encountered Millett's name there. It is, therefore, unlikely that the trial court's admonition could be depended upon to cause Juror Smith to disregard his suspicions because it directs him to ignore as unreal something that is real and that he likely saw.[7]

---

[7]As we have indicated, the question before us is whether Juror Smith could have been successfully challenged for cause had he disclosed during voir dire his suspicion

(continued...)

¶35    Further, Millett's status as a registered sex offender and his prior conviction of a sexual offense was information that was deliberately kept from the jury due to its high potential for prejudice. *See supra* ¶¶ 2-3. *See also State v. Doporto*, 935 P.2d 484, 490 (Utah 1997) ("The principle that evidence is not admissible to show a defendant's bad character or propensity to commit criminal acts is a fundamental tenet of American jurisprudence and has been recognized in this Court's opinions for over ninety years."), *superseded on other grounds as explained in State v. Nelson-Waggoner*, 2000 UT 59, ¶¶ 5, 16 n.5, 6 P.3d 1120. When this general potential for prejudice is combined with Juror Smith's own admission that he is "[m]aybe . . . a little over paranoid" about sex offenders and that he "keep[s] a very updated list" of sex offenders in Utah County, a question naturally arises whether Juror Smith could be a fair-minded decision-maker in this case, which involves sexual abuse of a child. Indeed, the trial court acknowledged that "Juror Smith's monitoring of the sex offender [registry] . . . may have been a material fact that was withheld" on voir dire.[8]

---

[7](...continued)
that Millett was a registered sex offender as well as the circumstances upon which that suspicion was based. Our analysis is therefore focused on whether Juror Smith could have been rehabilitated during voir dire and has little to do with the efficacy of curative instructions that are administered to a properly-selected jury. The distinction is significant, for although it is generally presumed that a juror will follow a curative instruction, *see generally State v. Harmon*, 956 P.3d 262, 273 (Utah 1998) ("[W]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it." (alteration in original) (internal quotation marks omitted)), a presumption of bias that is raised during voir dire is not so easily rebutted, *see West v. Holley*, 2004 UT 97, ¶ 15, 103 P.3d 708 ("[A] presumption of bias cannot be rebutted solely by a juror's bare assurance of her own impartiality because a challenged juror cannot reasonably be expected to judge her own fitness to serve."); *see also* Utah R. Crim. P. 18(e)(14) advisory comm. note (2007) ("Although thorough questioning of a juror to determine the existence, nature and extent of a bias is appropriate it is not the judge's duty to extract the 'right' answer from or to 'rehabilitate' a juror.").

[8]Our decision should not be read to mean that any person who accesses the sex offender registry should be dismissed for cause for that reason alone. Rather, such a decision would require consideration of all the attendant circumstances.

¶36    Because under the circumstances it is so likely that Juror Smith actually recognized Millett's name from the sex offender registry and because the nature of this information carries such a high potential for prejudice in a trial for child sexual abuse, his uncertainty alone does not convince us that he was capable of "act[ing] impartially and fairly" so as to avoid a challenge for cause, *see* Utah R. Crim. P. 18(e)(14). Accordingly, we conclude that had Juror Smith disclosed that he thought he recognized Millett's name from the sex offender registry at the time of voir dire, Juror Smith would have been dismissed for cause from the panel of prospective jurors.

¶37    Before concluding our analysis, we acknowledge that the potential for prejudice created by Juror Smith's disclosure of his concerns to the rest of the jury does appear to have been somewhat contained by the jury's conscientious self-policing as well as the trial court's thoughtful limiting instruction.  However, the question before us is whether Juror Smith himself would have been removed for cause had he disclosed the pertinent information during voir dire, and our analysis is therefore focused on the effect this information would have had on his qualifications as a juror rather than on any prejudicial effect this information may have had on the rest of the jury.  "[A] post-trial challenge to a juror who did not answer truthfully in voir dire *must* result in a new trial if truthful answers would have provided a valid basis for dismissing the juror for cause." *West*, 2004 UT 97, ¶ 27 (emphasis added).  Because we conclude that Juror Smith failed to accurately answer pertinent questions on voir dire and an accurate response to those questions would have provided a valid basis to remove him from the jury panel for cause, the *McDonough* test is satisfied and "mandates a new trial," *see State v. Thomas*, 830 P.2d 243, 245 (Utah 1992).

¶38    A criminal defendant has a constitutional right to a trial by an unbiased, impartial jury. *See* U.S. Const. amend. VI;  Utah Const. art. I, § 12.  Under our system of justice the presumption that a criminal defendant is innocent cannot be overcome unless the prosecution presents evidence that persuades each and every member of the jury that the defendant is guilty beyond a reasonable doubt.  In the end, a fair and impartial jury is the bulwark that defends against the possibility of an innocent man or woman being convicted and wrongly punished.  A single juror who does not meet the standard of impartiality fatally weakens that protection.  In this case, the information that Juror Smith likely possessed about Millett would have disqualified him from service as a juror in this case.  The fact that he communicated that information to the rest of the jurors compounds the problem.  The efforts that the trial court took to deal with the problem once it was revealed were admirable but are, in the end, insufficient to

give us confidence that the verdict met the high standards that apply to criminal trials. We must therefore set aside the verdict and remand the case for a new trial.

CONCLUSION

¶39     We conclude that the two prongs of the *McDonough* test are satisfied and Millett is entitled to a new trial because Juror Smith failed to accurately or honestly answer questions during voir dire, and an accurate response would have supported a valid challenge for cause.  We therefore reverse and remand for a new trial.

_____
Stephen L. Roth, Judge

-----

¶40     WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
Michele M. Christiansen, Judge