2014 UT App 7

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jack David MOYER, Defendant and Appellant.**

**No. 20120190–CA.**

Court of Appeals of Utah.

Jan. 9, 2014.

Richard G. Uday, Salt Lake City, for Appellant.

Sean D. Reyes and Brett J. DelPorto, Salt Lake City, for Appellee.

Senior Judge RUSSELL W. BENCH authored this Memorandum Decision, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.[1]

---

Memorandum Decision

BENCH, Senior Judge:

¶ 1 Jack David Moyer was convicted of ten counts of sexual exploitation of a minor, a second degree felony, based on his possession of child pornography. *See* Utah Code Ann. § 76–5a–3 (LexisNexis 2008) (current version at Utah Code Ann. § 76–5b–201 (LexisNexis 2012)). Moyer appeals his convictions, alleging prosecutorial misconduct and juror bias. We affirm.

## I. Prosecutorial Misconduct

¶ 2 Moyer argues that he was denied his right to a fair trial when the prosecutor made three improper statements in closing argument. In the first instance, referring to testimony that the file-sharing program on Moyer's computer was the enhanced version of LimeWire rather than the free version, the prosecutor said that Moyer "bought a version that he wanted to be able to use to get his child pornography faster." Moyer objected, arguing that the testimony did not establish how LimeWire came to be on the computer. The trial court sustained the objection and admonished the jury to ignore the statement. The prosecutor also corrected his statement to limit it to the evidence that had been provided.

¶ 3 In the second instance, the prosecutor discussed how possession of child pornography "is not a victimless crime":

The children who are portrayed in these videos and that you will read [about] ... were victimized. But these videos are a memorialization of the crimes that were committed against them. The horrible things that were done to them are forever contained on videos that are now being traded over the internet by people like Mr. Moyer.

The prosecutor added that people like himself, his co-counsel, and the Internet Crimes Against Children task force (ICAC) are "fighting this" by "trying to catch offenders who do this." Moyer objected, arguing that the case was not about the prosecutors' and ICAC agents' work. The trial court sustained the objection and directed the prosecutor to limit his argument to the evidence.

¶ 4 In the third instance, the prosecutor returned to the theme of the impact of child pornography on the victims:

What I want to talk to you about is the victims in these cases. It's unusual in a sex case and a sex crime to not have the victim here to testify and to tell you about what happened to her and how that has affected her life. And I can tell you that we know from victims in these cases that these videos and the sharing of them have devastating effects. And the victims who have been portrayed in these videos, who have been victimized, and then videotaped feel like when these videos are traded and shared and viewed by people like the Defendant, it's revictimizing them. They feel like they can never have the peace—

Moyer objected, stating that "again, it's what these victims feel like." The trial court sustained the objection and admonished the prosecutor, "Just limit yourself to the evidence that's been provided here and close, please."

¶ 5 After the jury was excused, Moyer moved for a mistrial. He argued that even though the objections had been sustained, the damage had been done and his Fifth Amendment rights had been violated because the prosecutor effectively made the trial about "something other than Jack Moyer." The trial court denied the motion.

¶ 6 "We review rulings on motions for a mistrial based on prosecutorial misconduct for abuse of discretion." *State v. Reed*, 2000 UT 68, ¶ 18, 8 P.3d 1025; *accord State v. Cummins*, 839 P.2d 848, 852 (Utah Ct.App. 1992) ("[B]ecause the trial court is in the best position to determine the impact of a statement upon the proceedings, its rulings on whether the prosecutor's conduct merits a mistrial will not be overturned absent an abuse of discretion."). Assuming without deciding that the prosecutor's statements were improper, we cannot conclude that the trial court exceeded its discretion in denying the motion for a mistrial.

¶ 7 A prosecutor's improper remarks warrant a mistrial only when "under the circumstances of the particular case, the error is substantial and prejudicial such that

there is a reasonable likelihood that in its absence, there would have been a more favorable result for the defendant." *State v. Tillman,* 750 P.2d 546, 555 (Utah 1987); *accord State v. Campos,* 2013 UT App 213, ¶ 67, 309 P.3d 1160. In considering "the circumstances of the case as a whole," "it is appropriate to look at the evidence of defendant's guilt," *State v. Troy,* 688 P.2d 483, 486 (Utah 1984), whether the prosecutor corrects any improper comments, *cf. State v. Davis,* 2013 UT App 228, ¶ 39, 311 P.3d 538, and any instructions given to the jury, *see State v. Dunn,* 850 P.2d 1201, 1225 (Utah 1993); *see also Taylor v. State,* 2007 UT 12, ¶ 115, 156 P.3d 739 ("When a court sustains an objection and gives a curative instruction, a defendant must show that 'the [prosecutor's] comment was so prejudicial as to defeat the mitigating effect of the court's ... curative instructions.' " (alteration and omission in original) (quoting *State v. Kohl,* 2000 UT 35, ¶ 24, 999 P.2d 7)).

¶ 8 Here, the main issue at trial was identity. Moyer claims that the only evidence connecting him to the child pornography was "circumstantial at best" and that conflicting evidence was presented that others had access to Moyer's computer. *See State v. Andreason,* 718 P.2d 400, 403 (Utah 1986) (per curiam) ("When the evidence in the record is circumstantial or sufficiently conflicting, jurors are more likely influenced by an improper argument.").

¶ 9 Though circumstantial, the evidence supporting Moyer's guilt was strong. According to the testimony of an ICAC investigator (Investigator), the operating system on Moyer's computer was installed on February 6, 2007, with Moyer's name entered as the registrant. LimeWire was installed at about the same time, and the first suspected child pornography file was downloaded February 7, 2007. Seventy-nine images of suspected child pornography were downloaded to Moyer's computer between February 7, 2007, and March 14, 2007, the day the computer was seized.[2] When Investigator and another ICAC agent (Agent) came to Moyer's house on March 14 to investigate illegal activity that Agent had observed on Moyer's IP address, Moyer told him that "he was the responsible person for the LimeWire activity on the computer." Investigator testified that about eighty percent of the files in the LimeWire shared folder were associated with child pornography.

¶ 10 The forensic evidence of Moyer's computer activity on the day the computer was seized is also strongly corroborative of Moyer's identity. According to Investigator, someone logged in to Moyer's computer at 3:18 p.m. on March 14. The user logged in to MySpace at 3:19 p.m., and the MySpace profile displayed the words "Hello Jack." The user opened LimeWire at 3:23 p.m. and at 3:24 p.m. opened a text file that contained a story describing sexual acts involving minors. At 3:25 p.m., the user began to chat with people on Yahoo! Messenger, with a username that appeared to be associated with Moyer. From 3:59 p.m. to 4:02 p.m., the user opened a website associated with Moyer's employer and accessed Moyer's work schedule, timecard, and payroll information. The user resumed activity at 6:44 p.m., using Yahoo! Messenger intermittently until 7:24 p.m. At 7:37 p.m., 7:41 p.m., and 7:42 p.m., the user accessed three files containing stories describing sexual acts involving minors. Then at 7:44 p.m., the user attempted to open, from the incomplete download folder, a video with a title suggestive of child pornography.[3]

¶ 11 Agent testified that he and Investigator came to Moyer's house at "about 7:30 in the evening" on March 14 to conduct a "knock-and-talk." Moyer answered the door, and after talking on the porch for "[m]aybe a little less" than ten to fifteen minutes, Moyer invited them in to see his computer. Agent and Investigator seized Moyer's computer, unplugging it at 7:58 p.m.—fourteen minutes after a user had attempted to open the video of suspected child pornography. Agent testified that no one else was present in the house

---

2. The bulk of these images, including the initial download on February 7, 2007, represented uncharged 404(b) evidence admitted over Moyer's objection. *See generally* Utah R. Evid. 404(b).

3. The files accessed on March 14, 2007, represented additional uncharged 404(b) evidence.

at the time, though Moyer presented evidence to the contrary.

¶12 Moyer argues that he adduced evidence at trial showing that others had access to his computer. Moyer's sister testified that several people lived at the house, including one friend (Friend) who lived there "for months." Moyer's sister testified that she saw Friend use Moyer's computer, typically at night while Moyer was at work, but that she could not see what Friend was doing on the computer. In rebuttal, the prosecutor called Friend to testify. Friend stated that he lived at the house for two or three weeks "[t]ops" and that he never used Moyer's computer. The prosecutor also had the records clerk for the county jail testify. She testified that Friend was incarcerated from February 20, 2007, to April 10, 2007, which covered the bulk of the period during which child pornography files were downloaded and accessed (February 7, 2007, through March 14, 2007).

¶13 Despite the evidence presented at trial that others had access to Moyer's computer, the circumstantial evidence discussed above strongly ties Moyer to the possession of child pornography. Use of Moyer's employment, MySpace, and Yahoo! Messenger accounts within minutes of accessing child pornography files strongly supports the jury's apparent inference that Moyer accessed the files. Furthermore, given Moyer's admission that he was responsible for the LimeWire activity on the computer and Investigator's testimony that the LimeWire program on Moyer's computer was predominantly used to download child pornography, it is unlikely that another user was responsible for downloading child pornography without Moyer's knowledge.

¶14 Not only was the evidence of Moyer's guilt strong, but under the circumstances of this case, the trial court's instruc-

tions cured any negative effects from the prosecutor's statements. Following the prosecutor's first statement about LimeWire, the trial court instructed the jury to ignore the comment and the prosecutor corrected himself. The trial court also instructed the jury in its general instructions that "[w]hat the lawyers say is not evidence" and that the jury's verdict "must be based only on the evidence produced here in court." The instructions further stated,

> Your duty is to decide this case and this case alone. You should not use this case as a forum for correcting perceived wrongs in other cases, or as a means of expressing individual or collective views about anything other than the guilt or innocence of this defendant. Your verdict should reflect the facts as found by you applied to the law as explained in these instructions and should not be distorted by any outside factors or objectives.

These instructions would have mitigated any tendency of the prosecutor's statements to turn the jurors' attention to broader societal concerns and away from the evidence. *See State v. Wright*, 2013 UT App 142, ¶42, 304 P.3d 887 ("In the absence of any circumstances suggesting otherwise, courts presume that the jury follows such instructions."). Under the circumstances of this case, the trial court acted well within its discretion in concluding that there was no reasonable likelihood of a different result in the absence of the prosecutor's statements to the jury. *See State v. Reed*, 2000 UT 68, ¶18, 8 P.3d 1025.[4]

## II. Juror Bias

¶15 Next, Moyer contends that he is entitled to a new trial because of juror bias. After he was convicted and sentenced, Moyer filed a motion for a new trial alleging that after trial, he recognized one of the jurors

---

4. When a claim such as prosecutorial misconduct is preserved, we engage in a harmless error analysis only if we first conclude that the trial court exceeded its discretion in its application of the law to the facts of the case. *See State v. Marks*, 2011 UT App 262, ¶11, 262 P.3d 13; *State v. Chavez*, 2002 UT App 9, ¶17, 41 P.3d 1137. Because we conclude that the trial court's denial of Moyer's motion for a mistrial did not constitute an abuse of discretion, we need not resolve the unsettled issue of what standard of harmless error applies to claims of prosecutorial misconduct. *See State v. Davis*, 2013 UT App 228, ¶¶9–12, 311 P.3d 538 (noting unsettled state of Utah law); *State v. Wright*, 2013 UT App 142, ¶41 n. 6, 304 P.3d 887 (same); *State v. Cox*, 2012 UT App 234, ¶15 n. 2, 286 P.3d 15 (Voros, J., concurring in part and concurring in the result in part) (same).

(Juror 11) and believed that she was biased against him.

¶ 16 In an affidavit accompanying his motion for a new trial, Moyer stated that Juror 11's family had lived near Moyer's family "approximately thirty years ago." He stated that he had had an affair with Juror 11's brother's wife and that Moyer's brother (Brother) had had "an intimate relationship" with Juror 11. Moyer stated that he did not recognize Juror 11 during trial because her appearance and name had changed since he knew her, but that the relationship between Moyer and Juror 11 "is very negative." And Moyer said, "I have no doubt that she would not forget me because my name has not changed since we knew each other." Moyer further stated, "The nature of her negative feelings for me is such that it would not have passed no matter how many years have passed." Moyer also presented an affidavit from Brother, stating that Moyer's affair led to the dissolution of Juror 11's brother's marriage, that the "intimate relationship" Brother had with Juror 11 was "several years ago" but lasted "many years." Brother concluded, "The nature of her negative feelings for me and my family is such that it would not have passed no matter how many years have passed."

¶ 17 In response, the State submitted an affidavit from Juror 11. Juror 11 stated, "I do not know Jack Moyer. During the trial, I did not recognize Jack Moyer, nor was his name familiar to me. I don't remember meeting or knowing anyone named Jack Moyer." Juror 11 stated that her younger brother had had a friend with the same name as Brother and that she remembered that friend as having a stepbrother named Jackson Martindale, but she did not know whether Jack Moyer and Jackson Martindale were the same person. She stated that she had never had an intimate relationship with Brother and estimated that Brother would have been about eight or nine years old when she got married thirty-nine years ago. She declared that she had no knowledge of someone named Jack Moyer having an affair with her brother's ex-wife. She concluded, "I never had any issues with or hard feelings

towards [Brother]. I don't know Jack Moyer."

¶ 18 The trial court examined the competing affidavits and concluded that portions of Moyer's affidavit were not based on personal knowledge or information and lacked foundation. The court concluded, "It is readily apparent that Mr. Moyer has no actual knowledge of Juror [11], nor her of him." The court denied the motion.

¶ 19 We review "post-trial challenges to a juror based on the juror's alleged misstatements or omissions during voir dire" under the two-pronged test set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). *West v. Holley*, 2004 UT 97, ¶ 11, 103 P.3d 708; *see also State v. Thomas*, 830 P.2d 243, 245 (Utah 1992) (adopting the *McDonough* test). "The *McDonough* test mandates a new trial if the moving party demonstrates that (1) 'a juror failed to answer honestly a material question on voir dire,' and (2) 'a correct response would have provided a valid basis for a challenge for cause.'" *Thomas*, 830 P.2d at 245 (quoting *McDonough*, 464 U.S. at 556, 104 S.Ct. 845). "Under the first prong of the *McDonough* test, 'the trial court's finding that [a] juror[] ... did not answer a material question dishonestly on voir dire is a question of fact, which we review under a clearly erroneous standard.'" *State v. Millett*, 2012 UT App 31, ¶ 15, 271 P.3d 178 (alterations and omission in original) (quoting *Thomas*, 830 P.2d at 245). "We will set aside a [trial] court's factual finding as clearly erroneous only if it is 'against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made.'" *Brown v. State*, 2013 UT 42, ¶ 37, 308 P.3d 486 (second and third alterations in original) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)).

¶ 20 Moyer has not identified a material question that Juror 11 allegedly answered dishonestly or inaccurately. "A juror clearly cannot fail to answer honestly a material question if the juror was not asked a question regarding the subject matter alleged to have gone undisclosed." *Thomas*, 830 P.2d at 246. Although we review a ju-

ror's disclosure or non-disclosure "in light of the entirety of the voir dire," *Millett,* 2012 UT App 31, ¶ 27, 271 P.3d 178, the appellant has the burden to demonstrate that the juror was asked "questions which should have made [the juror] aware of the need to bring the [issue] to the court's attention," *see Thomas,* 830 P.2d at 246; *see also State v. Robison,* 2006 UT 65, ¶ 21, 147 P.3d 448 ("An appellant must do the heavy lifting because the law otherwise presumes that all was well below.").

¶ 21 Furthermore, Moyer has not shown clear error in the trial court's finding that Juror 11 did not know Moyer. He merely recounts the statements in the competing affidavits and then concludes that "the trial court incorrectly decided the question." Moyer has done nothing more to demonstrate that the trial court's finding is against the clear weight of the evidence. Therefore, we will not reverse the trial court's ruling on Moyer's motion for a new trial. *See Brown,* 2013 UT 42, ¶ 37, 308 P.3d 486.[5]

¶ 22 As a subset of his claim of juror bias, Moyer asserts that his trial counsel was ineffective for not requesting an evidentiary hearing on his motion for new trial. To demonstrate ineffective assistance of counsel, Moyer must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The trial court carefully considered the competing assertions in the affidavits submitted below and identified several weaknesses in Moyer's affidavit. On appeal, Moyer reasserts the statements in the affidavits. But he points to no record evidence to demonstrate that the trial court likely would have reached a different conclusion had a hearing been held. Nor does he request a 23B remand to establish a record demonstrating prejudice. *See generally* Utah R.App. P. 23B; *State v. Litherland,* 2000 UT 76, ¶¶ 16–17, 12 P.3d 92 ("Where trial counsel's alleged ineffectiveness caused or exacerbated record deficien-

cies, ... defendant bears the primary obligation and burden of moving for a temporary remand."). Moyer therefore cannot demonstrate a reasonable probability of a more favorable result had a hearing been held, and his claim of ineffective assistance fails.

¶ 23 In sum, the trial court did not exceed its discretion in denying Moyer's motion for a mistrial. Furthermore, Moyer has not demonstrated clear error in the trial court's findings supporting its denial of his motion for a new trial, nor has he demonstrated that he was prejudiced by his trial counsel's failure to request an evidentiary hearing on that motion.

¶ 24 Affirmed.

---

5. To the extent Moyer raises a challenge to Juror 11 based on other alleged bases for bias, that challenge is inadequately briefed and we do not address it further. *See State v. Thomas,* 961 P.2d 299, 305 (Utah 1998) (stating that an appellate

court need not decide an issue "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court").